JOHN KELLY, as late sheriff, etc., Appellant, *v.* WILLIAM C. SCOTT et al., assignees, etc., Respondents.

SAME APPELLANT *v.* SAME RESPONDENTS.

S., M. & P. advertised themselves as copartners under the firm name of J. E. S. & Co. S. in fact owned the entire interest in the property nominally of the firm and in the profits of the business. S. failed and went into bankruptcy. In a contest between attaching creditors of the firm and the assignees in bankruptcy,—*Held*, that while, as matter of law, M. & P., having none of the rights of partners, could transmit none to creditors, and the property being the individual property of S., passed to his assignees; yet, that inasmuch as the creditors of the firm, who dealt with it in ignorance of the real state of facts, had a right to rely, and were presumed to have relied, not only upon the personal responsibility of the nominal partners, but upon the equitable lien upon the property resulting from that relationship; both S. and his assignees were estopped from denying that M. & P. were actual copartners; that the firm creditors were entitled to all the rights which they would have had if such had been the fact, and therefore, to a preference in the payment of their debts out of the assets nominally of the firm.

Secret arrangements between copartners at variance with the apparent ones, and to the injury of third persons, are against public policy and void.

(Argued June 4, 1872; decided June 11, 1872.)

APPEALS from judgments of the General Term of the Supreme Court in the first judicial department, affirming judgments entered in favor of defendants upon the reports of a referee.

These actions were brought by plaintiff, as sheriff of the city and county of New York, to reach the avails of certain property alleged to belong to the firm of John E. Shawhan & Co., which plaintiff claimed under and by virtue of attachments against said firm in suits brought against it by firm creditors.

On the first of July, 1867, John E. Shawhan, C. Mendall and A. H. Palmer, of St. Louis, Missouri, advertised themselves as copartners, under the firm name of John E. Shaw-

han & Co., and they continued business in St. Louis ostensibly under that name until October, 1867. In reality, Mendall and Palmer were not partners, but merely clerks in the employ of Shawhan, receiving salaries as such. The latter owned all the property. This secret arrangement was unknown to the creditors of the nominal firm. Shawhan failed in October, 1867; instituted proceedings in bankruptcy, and was adjudged a bankrupt in the District Court of the United States for the eastern district of Missouri. The defendants were appointed his assignees. At the time of the failure, certain agents in New York, of the nominal firm, had in their hands the avails of property shipped to them to sell on commission. The proceeds of this sale were included by Shawhan in the schedule of assets filed in his proceedings in bankruptcy. Certain of the firm creditors thereupon commenced suits by attachment against the members of the firm, which writs of attachment were placed in plaintiff's hands for execution, and by virtue thereof he attached the moneys arising from the sales in the hands of the agents, and after the obtaining of judgments, these actions were brought against the agents to compel the payment of the funds in their hands as aforesaid. By orders of interpleader in the actions, the present defendants, the assignees in bankruptcy, were substituted as defendants, and the moneys were paid into the United States Trust Company to abide the judgment.

The referee found, in substance, that Shawhan, when he became bankrupt, was the sole owner of the funds in controversy, and that the same passed, by the assignment in bankruptcy, to his assignees, and the subsequent levies by plaintiff were inoperative and void, and he thereupon directed judgments in favor of defendants, which were accordingly entered.

*John C. Dimmick* for the appellant. Shawhan was estopped from denying the partnership and the rights resulting therefrom. (*De Zell* v. *Odell*, 3 Hill, 215.) His assignees take no other or different interest than Shawhan possessed.

(*Ex parte Newhall*, 2 Story, 360 ; *Mitchell* v. *Winslow*, 2 id.,
630 ; Bankrupt Law, 1867, by Edwin James, p. 36, and cases
cited.) Defendants had nothing to do with the copartner-
ship property. (*In re Shepard*, 3 Benedict's U. S. R., 347.)

*Benjamin Odell* for the respondents. Mendall and Palmer
became liable as partners. (*Burns* v. *Rowland*, 40 Barb.,
368 ; *Conklin* v. *Barton*, 43 id., 435 ; *Vibbard* v. *Roderick*,
51 id., 616.) They were not partners, *inter sese*. (*Burckle*
v. *Eckhart*, 3 N. Y., 132 ; *Pattison* v. *Blanchard*, 5 id.,
186 ; *Conklin* v. *Barton*, 43 Barb., 437 ; *Salter* v. *Ham*, 31
N. Y., 321 ; *Hanson* v. *Paige*, 3 Gray, 239 ; *Irvin* v. *Conk-
lin*, 36 Barb., 68.) The funds in question belonged to Shaw-
han and passed to his assignees. (Bankrupt act, § 14 ; *Mat-
ter of Ellis*, 1 B. Reg., 154 ; *Pennington* v. *Lowenstein*, 1
id., 157 ; *Matter of Homberger*, 2 id., 33 ; Bump on Bank-
ruptcy, 3d ed., 282, 289.)

CHURCH, Ch. J. This case presents a somewhat novel
phase to the disputed and much litigated questions growing
out of the respective rights of individual and partnership
creditors to partnership property, and the remedy for enforc-
ing such rights. As between themselves, Mendall and Palmer,
were nominal partners merely, Shawhan having the entire
interest in the property and in the profits of the business.

There is no dispute that Mendall and Palmer by holding
themselves out as partners were personally liable for the debts
of the firm, although they in fact had no interest in it. (Story
on Part., § 64.) But there is no question of personal liability
in the case. The firm failed and Shawhan went into bank-
ruptcy, and this is a contest between his assignees in bank-
ruptcy to property nominally held by the firm, but really
belonging to Shawhan by virtue of the original arrangement
between him and Mendall and Palmer by which they were to
be nominal partners and an attaching creditor of the firm.
I fully concur with the legal propositions in the opinion of
the learned referee, and if they are decisive of the case the

judgments must be affirmed. According to the authorities upon the subject as they now exist, each partner by virtue of his community of interest, in case of insolvency or dissolution of the firm, has a lien upon the partnership effects for the discharge of all the partnership debts, and this equity may be made available for the benefit of creditors to secure a preference in the payment of partnership debts. It is said that although the creditors have no lien they have "something approaching to a lien" of which they may avail themselves to secure an equitable preference. (Story on Partnership, § 360.) And an attachment or execution for a partnership debt will take precedence over process on an individual debt by virtue of this *quasi* lien derived through and dependent upon the lien of each partner upon partnership effects to have the partnership debts paid. (Id., 361, and cases cited.) It is a part of the same theory that this equitable lien of each partner is for his benefit only, and that by a transfer *bona fide* of his interest in the partnership effects to his copartner, the lien or equity is gone and the creditors can derive no rights through or by reason of it. In other words, the creditor's right is derivative only, and if by any valid arrangement or agreement the partner deprives himself of it, the creditors can derive none through him. It has accordingly been held, that if one of two partners transfers in good faith to the other all his interest in the partnership effects, and in consideration of the payment of partnership debts, his equity or lien to have the partnership debts paid is gone, and he has only the personal security of his copartner, and that the latter becomes the absolute owner of the property, which is equally subject to individual as to partnership debts, and the partnership creditors lose their derivative right of lien by the transfer of the partner through whom alone they could derive it. (32 N. Y., 65; 8 Barb., 593.) This theory, it must be confessed, seems artificial and indefinite, but it has been generally adopted by the courts, and is a modification in favor of partnership creditors of the old notion of a tenancy in common.

Mr. Parsons in his work on Partnership (p. 355), in an

able review of the general subject, has suggested a further modification in the same direction assimilating partnerships more nearly to corporations, and it is not improbable that the growing importance of the relation may induce the adoption of some change by which the rights and equities of partnership creditors shall be more certain, and independent of the action of the partners themselves. Mendall and Palmer never had this equitable lien, because by the original arrangement between them and Shawhan he was the absolute owner of the property with power of disposition. Their legal position was that of surety for Shawhan, without any of the rights of a partner, and having no such rights, they could transmit none to creditors. It would follow that the property in the hands of Shawhan was individual property and passed to his assignees. Upon this ground the referee found for the defendants, and found correctly, if the facts which actually existed are controlling.

But there is another view of the case which I think deserves attention, and that is, whether Shawhan himself, or his assignees, are in a position to deny to the partnership creditors all the rights which they would have had if Mendall and Palmer had been actual partners. Can he deny that they were partners in fact, not merely to the extent of personal responsibility, but also as possessing the equitable right necessary to enable partnership creditors to secure their just preference. Shawhan advertised to the world that they were partners. The attachment creditor dealt with them as such. Had he not a right to rely not only upon their personal responsibility, whatever it was, but upon this equitable security upon the partnership effects; and are we not bound to assume that he did so rely?

It may be said that they could at any time have transferred to Shawhan their whole interest, and thus deprived the partnership creditors of this right. If the transfer had been made in good faith such might have been its effect, and the creditors could not lawfully complain. But this was not done. A transfer in contemplation of bankruptcy, or one

made with intent to deprive the creditors of their equitable lien, would have been void. It is only in case of insolvency or dissolution that the lien attaches. While the business continues and the firm is solvent, neither the partners nor creditors have any lien except by the ordinary process of judgment and execution. Nor would an original contract, I apprehend, be allowed to stand against partnership creditors, which provided, in case of bankruptcy, that one of the partners should own the whole property, and thus expose it in advance to individual creditors. (Id., § 358.) The question is, what did Shawhan assert by his acts and declarations in respect to Mendall and Palmer, and what had the attaching creditor a right to understand that he asserted? Was it that they were nominal partners merely, or that they had invested him with the absolute title to all property owned or to be purchased? There is not a circumstance in the case to favor such an inference. On the contrary they appeared to be partners possessing the ordinary rights and subject to the usual obligations. It is to be presumed that Shawhan intended the public should so understand, and that the attaching creditor did so regard them. It may be urged that such an arrangement might lawfully be made, and consequently that all persons dealing with the firm did so with a knowledge of it subject to this right. This is the most plausible view for the defendants, but I do not regard it as conclusive. The point is, in what position did Shawhan place Mendall and Palmer by his acts and declarations? It is not what possible contract they might have made, but from Shawhan's acts how had the public a right to regard them? I think that the fair and reasonable inference which any business man dealing with the firm would draw from the acts and conduct of Shawhan, would be that he had admitted Mendall and Palmer as partners, with the ordinary rights and subject to the usual obligations incident to that relation. If so, we cannot say that the attaching creditor did not deal with the firm, and give them credit partly on the supposition that he would be entitled to the preference which he is now seeking to enforce.

It is not unusual to give a firm credit, when the same credit would be withheld from either of the individuals composing it, because of this known right of preference to partnership effects. If I am right in translating the acts of Shawhan as a deliberate and definite representation that Mendall and Palmer were partners, with the usual rights and obligations, and that the attaching creditor properly so regarded them, and gave the firm credit upon the faith of it, it follows as a necessary legal sequence that he cannot be permitted to deny it to the injury of the creditor upon the principle of an *estoppel in pais.* It is conceded that no right could be derived through the nominal partners, because they possessed none, and whether they claim or renounce all partnership rights is of no consequence. The rights of the attaching creditors, must rest upon the legal inability of Shawhan to deny that they possessed the rights requisite to sustain the creditors' claim to this money.

The principle of estoppel is too well understood and too firmly settled to require the citation of authorities. *De Zell* v. *Odell* (3 Hill, 215) is a leading authority in this State, but the principle has been repeatedly adjudicated since. The rule is always applied to enforce integrity and fair dealing in the business concerns of life. It prohibits one from denying his declarations to the injury of another who has acted upon the faith of them, and it applies as well to acts and conduct as to declarations. I think also that the application of the rule to a case like the present is in accordance with public policy, and is calculated to subserve the ends of justice. We cannot, of course, know what the facts of this particular case are, but it is palpable that a contrary rule might in many cases work great fraud and injustice. If secret agreements of an unusual character, creating relations directly at variance with those which are apparent, can deprive partnership creditors of that preference which the law declares just, and expose the property to the individual creditors of one of the partners, gross frauds could be committed not only, but the confidence of the commercial community would be impaired and the business

interests of the country suffer. All secret arrangements between partners to the injury of third persons are void.

Shawhan being estopped from denying the rights of the attaching creditor, his assignees are also estopped. They have no other or superior rights to him, and they are vested with the property subject to all equities against it in his hands. (2 Story R., 360, 630; James' Bankrupt Laws, 36; Benedict's U. S. Dist. Court R., 347.) It was admitted upon the argument that if Mendall and Palmer had been in fact partners, the defendants would have had no title. The same result must follow if they are in a position with reference to the property where they cannot deny the partnership. These views lead to a reversal of both judgments.

All concur.

Judgments reversed.