WHITWORTH & MOORE *et al. v.* J. C. PATTERSON *et al.*

1. ASSIGNMENT. *Not invalid. When.* An assignment for the benefit of creditors is not rendered invalid by the following clause therein: "I hereby expressly waive a bond from the trustee, having the fullest confidence in his capacity and integrity."

2. SAME. *Dormant partner. Partners.* In the case of a dormant partner, and, *a fortiori,* where there is no partnership, and only the holding out of another person as a partner to a few individuals, the active partner, or the real proprietor, may make an assignment of the effects. for the security, in the first instance, of his individual debts, and then *pro rata* for all creditors.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Ch.

WILKIN and CHAMBERLIN for complainants:

MORRIS & KENNEDY for defendants.

COOPER, J., delivered the opinion of the court.

On the 13th of November, 1879, the defendant, J. C. Patterson, by assignment in trust for the benefit of creditors, conveyed to defendant D. H. Davis, as trustee, all his stock of goods, fixtures and furniture in a certain storehouse, together with all goods in transit to the store, his accounts, notes, due bills and judgments, with authority to immediately take possession of all the property, and sell the goods and fixtures at public or private sale as he may deem for

the best interest of the creditors, and upon such terms as may be thought best, and to collect the debts. With the proceeds of the trust effects, after paying necessary expenses, the trustee is directed to pay five specified debts, in the order in which they are named, in full, and then all other creditors equally. The deed estimates the assets at about $5,000, and the debts at about $3,000, adding: "Proper schedules of assets and liabilities will be furnished the trustee."

The assignment concludes thus:

"I hereby expressly waive a bond from said Davis, having the fullest confidence in his capacity and integrity."

On the same day, the trustee wrote at the foot of the deed, and signed an acceptance of the trust.

On the 14th and 15th of November, 1879, the four bills consolidated in this record were filed in succession by the complainants, claiming to be creditors of J. C. Patterson and W. H. Corder, as partners trading in the name of J. C. Patterson, against Patterson, Corder, Davis and the principal preferred creditors, attacking the trust assignment as void on its face and fraudulent in fact. The defendant, W. H. Corder, alleged by the bills to be a partner, was one of the preferred creditors, being the third in the order in which those creditors were to be paid in full. On the 18th of November, 1879, Davis, the trustee, filed his answer, making it a cross-bill for the purpose of bringing before the court the few creditors not parties to the bills, and for an administration of the trust.

On the 19th of November, 1879, the causes were consolidated, and the goods, which had been attached under the four bills, were ordered to be sold, the proceeds to abide the event of the litigation. A receiver was afterwards appointed to collect the debts due to Patterson. Proof was taken, and, on final hearing, the chancellor set aside the deed of assignment as void upon its face, by reason of the clause releasing the trustee from giving bond, as required by law, for the faithful discharge of his duty. He was also of opinion that there was no actual partnership between J. C. Patterson and W. H. Corder, but that they had both held themselves out as such to certain of the complainants named, and he gave these complainants a decree for their respective demands against Patterson and Corder. He gave others of the complainants a decree for their respective demands against Patterson alone. He was of opinion, and so decreed, that the trust assignment was also fraudulent and void, because it undertook to convey partnership property to secure the individual liabilities of Patterson. He decreed further, that the creditors who had accepted the trust, namely, the preferred creditors and M. Schwartz & Co., were not entitled to share in the proceeds of the trust property, until the complainants found by him to be creditors of Patterson and Corder, and the complainants who were creditors of Patterson alone, were fully paid. No decree seems to have been rendered in favor of the preferred creditors and Schwartz & Co. for their respective demands.

The "defendants" prayed an appeal, but the appeal

was only perfected by J. C. Patterson. The record has, however, been filed for a writ of error by L. H. Davis, the trustee, and the beneficiaries, W. H. Corder, S. A. Patterson and Mrs. Rainey.

The chancellor placed his finding against the validity of the trust assignment upon only two grounds— the waiver upon its face of the execution by the trustee of a bond for the faithful discharge of his duty, and the conveyance of partnership property to secure the individual liability of one of the partners. His Honor was doubtless of opinion, in which we concur, that none of the other grounds upon which the assignment was attacked by the bill had been made out. The proof is clear that the claims which were preferred by the assignment, were justly due and owing by Patterson to the claimants. The absence of schedules of debts and liabilities, and a failure to specify a time for closing the trust where the instrument provided for the immediate possession of the assignee, were clearly insufficient to avoid the assignment.

If his Honor, by his decree, meant that the conveyance of the partnership property by one partner in trust to secure the individual liabilities of the firm, would be void for that reason, his decision would be in conflict with that of this court in *Lasell* v. *Tucker*, 5 Sneed, 33. It was there held that, even in the case of an open partnership, one member of a firm of merchants might make a valid assignment of the goods, notes and accounts of the firm for the benefit of creditors, and that the including therein the individual debts of the grantor would not avoid the as-

signment. And whether the doctrine of that case be maintainable or not upon the facts presented, of which a doubt is expressed in the subsequent case of *Bancroft* v. *Snodgrass*, 1 Cold., 430, it would certainly be correct in a case like the one before us, where the maker of the assignment was the only ostensible partner, the defendant Corder, if a partner at all, being merely a dormant partner. In such a case, the ordinary rules touching partnership transactions and partnership property do not apply: *Vaccaro* v. *Toof*, 9 Heis., 194. The dormant partner has clearly no equity to require the application of the partnership property to the payment of the firm debts to his exoneration, as against the creditors of the ostensible partner, who has been dealt with as the sole owner: *Carmack* v. *Johnson*, 1 Green Ch., 163. And the creditors of the firm who have no equity except such as can be worked out through the dormant partner, cannot require that the partnership property be first applied to the satisfaction of their debts: *French* v. *Chase*, 6 Me., 166; *Lood* v. *Baldwin*, 6 Pick., 348. It is a race of diligence between the two classes of creditors, and equity will not interfere to deprive either of a legal advantage: *Hillman* v. *Moore*, 3 Tenn. Ch., 454.

His Honor the Chancellor, moreover, found as a fact that there was no actual partnership between J. C. Patterson and W. H. Corder; but that they had both held themselves out as partners to certain of the complainants named. We concur in the conclusion that there was no partnership between Patterson and

Corder. And if the rights of the parties turned upon the point, we think there is no sufficient proof to show that Patterson ever so held Corder out as a partner to any of the complainants as to affect his rights of property. Positive proof of the real agreement between the parties, it has been held, will overcome any general statement or admission of the real owner of property that another was his partner therein: *Nicholas* v. *Thielges*, 11 Rep., 144, Sup. Crt. Wis. The agreement between Patterson and Corder was, that Corder should take charge of Patterson's tobacco store and run it as clerk and agent, receiving for his compensation one-half of the net profits. This would not make him a partner: *Polk* v. *Buchanan*, 5 Sneed, 722; *Bell* v. *Hare*, 12 Heis., 615; *England* v. *England*, 1 Baxt., 108; *Norment* v. *Hull*, 1 Hum., 320. The reason for this arrangement was that Patterson, at the time, was the owner of a dry goods store and also acting as the clerk of another firm. Corder had shortly before failed in business on his own account, and was in no condition either to buy an interest in a stock of goods or to carry on trade in his own name. He was a brother-in-law of Patterson, and the latter, who, under the circumstances, was compelled to give ample power to some one, might well prefer to entrust his business to a person thus connected with him by the ties of affinity. The fact that Corder was to be paid out of the profits, and personally attended to the purchases and sales, would naturally produce the impression, to use the language of one of the witnesses of the complainants, that he

was "interested in the business." He admits, moreover, that he did state to some persons that he was a partner. Two of those who sold stock to the house, frankly say that they never understood Corder to be a partner. Two others, while deposing to their impression that he was a partner, admit that neither Patterson nor Corder ever told them so. One or more witnesses for each of the firms in whose favor the chancellor gave a decree against Patterson and Corder as partners, do say that they understood from one or both that Corder was a partner. Both Patterson and Corder deny the conversations deposed to by these witnesses. In view of the fact that it is satisfactorily shown that Corder could give no strength to the business except by his management, and the further fact that the witnesses may have misunderstood the language used, we cannot think that the complainants have made out a case of partnership as against Patterson. The recovery against Corder is justified by his admission. At most, as the chancellor found, it would be the mere holding of themselves out to certain specified firms, five in number, as partners, when in reality there was no actual partnership. In this view, as we have seen, Corder would have no interest in the property of Patterson, and the creditors would have no equity to work out through him: *Hamper, ex parte*, 17 Ves., 403. Whatever rights they would have would be by way of equitable estoppel: *Kelly* v. *Scott*, 49 N. Y., 599. But that estoppel would be purely personal on the parties, and, in the case of a dormant partnership, would not affect

the rights of the creditors of the acting partner: *Norfolk, ex parte,* 19 Ves., 455; *Cammack* v. *Johnson,* 1 Green. Ch., 169; *Hillman* v. *Moore,* 3 Tenn. Ch., 458.

The only question remaining is, whether the trust deed is rendered fraudulent and void on its face by the provision that the grantor waives the execution of a bond by the trustee. By the Code, sec. 1974, it is provided that "every trustee or assignee, to whom property exceeding the value of five hundred dollars is conveyed in trust for the benefit of creditors, sureties or other persons, unless by them released in writing from the obligations hereinafter prescribed, before entering upon the discharge of his duty, shall give bond," &c. This court has repeatedly held that the failure of the trustee to give the bond will not affect the validity of the deed, but only authorize the beneficiaries to remove the trustee. The conveyance is valid to pass the title to the property without bond: *Mills* v. *Haines,* 3 Head, 335; *Vance* v. *Smith,* 2 Heis., 343; *Williams* v. *Gideon,* 7 Heis., 617; *Edmondson* v. *Harris,* 2 Tenn. Ch., 435. And any beneficiary who actively procures the trustee to act before he has complied with the statute, and all persons claiming through him, will be estopped to dispute the validity of the act: *Ferris* v. *Eichbaum,* 4 Baxt., 70. The requirements of the statute are for the benefit of the *cestui que trust,* and may be released by them. The grantor, it is clear, can have no control over this right of the beneficiaries, and no interest in the matter, unless it be in a possible sur-

plus after the payment of the debts.    He cannot, of course, insert any stipulation in the assignment for his own benefit, or couple the title of the property conveyed with any condition seriously prejudicial to the rights of the creditors secured: *August* v. *Seeskind,* 6 Cold., 166, 181.    If the clause of the deed in question can be held to affect the rights of the beneficiaries under the statute, the deed would be clearly void. Thus, for example, if the grantor had said that he made the assignment with the condition that the assignee should not be required to give bond and qualify according to law, the conveyance could not stand, for the condition would be one which he had no right to impose.    But the language used in this case was neither intended to have that effect, nor does it admit of the construction.    It does not impair in the least the rights of beneficiaries, and is at most an expression of willingness on the grantor's part to waive the bond.

Reverse the decree, and render a decree here in accordance with this opinion.    The costs will be paid out of the trust fund.