Boro v. Harris.

## MARY BORO and JAMES BORO v. MARY HARRIS.

1. CHANCERY PLEADINGS AND PRACTICE. *Minor. Ejectment.* An infant was, by his general guardian, made a party defendant to an action of ejectment, upon the verdict in which the lower court rendered judgment in his favor, and this court against him after he came of age, but without any entry showing appearance by him as an adult, and he filed a bill for the recovery of the land within three years after he came of age: Held, that the judgment in ejectment was no bar to the new suit.

2. SAME. *Appearance by attorney.* A judgment resting upon the unauthorized appearance of an attorney, may be annulled in equity upon a bill filed for the purpose.

3. EJECTMENT. *Equitable right.* A recovery in an action of ejectment only determines that the successful party has the better legal title, and will not prejudice the equitable rights of the losing party.

Boro v. Harris.

4. PARTNERSHIP. *Levy on interest of partner.* If, in legal effect, a partnership be created between parties, all that an individual creditor of one of the partners could reach by a levy of an execution on the interest of that partner in partnership realty, or that a purchaser under the execution sale could acquire, would be the interest of the partner after a partnership account.

5. SAME. *Action of partner to avoid debts.* If a person, having the capital, hold out two other persons as the only partners in a business, owned and conducted exclusively by him, in order to avoid certain claims which were likely to come against him, it is a point of grave difficulty, not now determined, how far such person could enforce against the other parties in possession the consideration of the conveyance of property to them bought with the ostensible partnership assets.

6. SAME. *Abandonment. Purchaser with notice.* If such person took possession of real estate thus bought, remaining in possession until his death two years thereafter, and then one of the ostensible partners, who is also the guardian of the infant children of the deceased, take possession, and use the rents partly to pay partnership debts and partly for the benefit of his wards, and after the debts are paid exclusively for their benefit, the other partner never taking possession nor claiming any interest therein, and both afterwards joining in a conveyance of the realty to the children, there would be an abandonment of all claim except as trustee for the children, and a purchaser at execution sale of the interest of the partner who was never in possession, with notice of the equity of the children, would only acquire the legal title subject to the equity.

7. EXECUTION SALE. *Caveat emptor.* The rule of *caveat emptor* applies to a purchaser at execution sale, and if, at the time of sale, the purchaser has actual notice of an equitable right in a third person, especially if possession be held under that right, he will take subject to the equity; and *a fortiori* if he pay for the purchase by a credit on an antecedent debt.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

H. C. KING, W. H. HEISKELL and FLIPPIN & FLIPPIN for complainants.

---

---

METCALF & WALKER for defendant.

COOPER, J., delivered the opinion of the court.

The contest in this case is over a lot, on which is a storehouse, in the city of Memphis. The complainants claim the lot as the children and heirs of James Boro, deceased. The defendant holds under a sheriff's deed by virtue of a judgment and execution sale of the lot as the property of Joseph Boro, a brother of James Boro. The chancellor, on final hearing, dismissed the bill, and the complainants appealed.

The lot was bought and paid for by James Boro on May 15, 1862, who caused the conveyance to be made to "Joseph Boro and George W. Wible, firm of J. Boro & Co." The purchase money was paid out of the assets of the firm, and there can be no doubt that James Boro was the principal owner of these assets, although the firm business was conducted in the names of Joseph Boro and G. W. Wible, who were held out to the world as the sole partners. The deed to J. Boro & Co. was executed on the 17th of May, 1862. James Boro died in February, 1864, leaving the complainants, then infants, his only heirs. He had been in possession of the lot up to his death. Shortly afterwards the premises on the lot were seized by the United States military authorities, and used as a military prison until some time in 1865. When vacated by the military, they were taken possession of by G. W. Wible, who rented them, using the rents partly for the payment of the debts of J. Boro & Co., and partly for the support and education of the

complainants.    Wible, and one Jenny, had been ap-
pointed and qualified as guardians of complainants.
So far as appears, Joseph Boro never claimed or had
possession of the lot.    On May 17, 1871, Joseph Boro
and Geo. W. Wible conveyed the lot by deed to com-
plainants.

On October 14, 1865, the defendant, Mary Harris,
leased to Joseph Boro and others a storehouse in Mem-
phis for several years, taking their notes for the rent.
One of these notes, payable January 1, 1869, for
$2,500, was sold and endorsed by Mary Harris to one
Reeves, who sold and endorsed it to D. H. Townsend
before maturity.    The note was protested for non-
payment, and the liability of Mary Harris as endor-
ser fixed by notice.    After the maturity of the note,
Townsend called upon Wible for information as to the
financial condition of Joseph Boro and the other makers
of the note, and was told by him that they were
worth nothing, and that the property which stood in
the name of Joseph Boro did not belong to him, but
to James Boro's heirs.    Townsend, thereupon, notified
the attorney of Mary Harris that he intended to look
to her for payment.    At the request of the attorney,
and upon an agreement that Mary Harris would con-
fess judgment on the note, he agreed that the attorney
might bring suit in his, Townsend's name, against
Joseph Boro on the note.    Suit was accordingly brought
by said attorney, and judgment recovered May 11,
1870.    Execution issued on this judgment, and was
levied upon Joseph Boro's interest in the lot in con-
troversy.    On January 11, 1871, that interest was

sold by the sheriff under the execution, and bid off by Mary Harris, who paid the costs, and sunk the residue of her bid on the judgment recovered in Townsend's name for her benefit. The sheriff made her a deed July 8, 1871. On June 26, 1871, she confessed judgment on the note in favor of Townsend, and this judgment was satisfied by a sale of her property, which she subsequently redeemed.

On the 16th of August, 1872, Mary Harris brought an action of ejectment at law against G. W. Wible, John Lunte and Jo. Flynn, to recover possession of the undivided half of the lot in controversy, which she claimed under the execution sale and purchase as the property of Joseph Boro. Lunte and Flynn were temporary tenants under Wible, and the only defense was made by him. The suit was against Wible individually as having the possession, but there can be no doubt that he considered himself as defending for the complainants, who were still under age, and for whom he and Jenny were the guardians. His counsel so understood the case, and expected to defend upon the title of the wards. On September 23, 1875, while the ejectment suit was being tried, the following entry was made on the minutes of the court: " In this cause, it appearing to the court by admission of parties in open court that defendant, G. W. Wible, is the regular statutory guardian of James Boro, infant child of James Boro, deceased, and that he, as such guardian, and Mary Boro, another child of James Boro, now adult, are and were in possession of the lot of ground sued for at the commencement of this

suit, and that the other defendants named are the tenants of the said Mary and of said James by his guardian; and thereupon, upon application of defend-ants and said Mary and James Boro, with the consent of parties, the said James and Mary Boro were made also defendants hereto, and the said Wible is appointed guardian *ad litem* to defend for the said James; and thereupon said Mary, and James by his said guardian, appeared by counsel, and for plea adopts the plea heretofore filed in this cause upon which issue is joined." The complainant, Mary Boro came of age April 5, 1874, and complainant, James Boro, October 29, 1875.

By consent of parties, the jury found a special verdict on certain issues, other matters being left to the decision of the court. The jury found as facts that James Boro was not a member of the firm of J. Boro & Co., but was using the names of Joseph Boro and Geo. W. Wible for the sole purpose of trans-acting his own business, owned and conducted exclu-sively by himself; and that this was done in order to avoid claims which were likely to come against him. The trial judge, upon these findings and the matters reserved, gave judgment for the defendants. The plain-tiff appealed in error to this court. The cause was transferred by consent of parties to the Commission Court, and the judgment was reversed, and judgment rendered in favor of the plaintiff in June, 1877. The present bill was filed June 16, 1877, to enjoin the execution of the writ of possession issued on that judgment, and for relief. An injunction was granted,

Boro *v.* Harris.

which was afterwards dissolved, and Mary Harris put in possession of the moiety of the property.

Treating the bill as virtually an action of eject-ment for the recovery of the possession of the prop-erty, the first defense relied on is the *res adjudicata* of the previous action at law. At common law, how-ever, the verdict and judgment in an action of eject-ment were not conclusive upon the parties, and a new action might be brought by the losing party, and so on as often as he saw proper. The only remedy for a successful suitor was in the court of chancery, after a number of favorable verdicts, to prevent vexatious litigation. The Code now provides, sec. 3252, that a judgment in ejectment "is conclusive upon the party against whom it is recovered, not under disability at the time of recovery, and all persons claiming under him by title accruing after the commencement of the action." It further provides, sec. 3253: "If the person against whom the recovery was had is under the disability of infancy, coverture or unsoundness of mind at the time of the recovery, the judgment is no bar to an action commenced within three years after the removal of such disability." The present bill was filed within three years after the trial of the action of ejectment at law, and only a few days after the final action of this court in the appeal in error taken therefrom. The complainant, James Boro, was an infant at the time of the trial, and the verdict of the jury. It is true, the judgment of the trial court was in his favor, and it was only on the final hearing in this court that the judgment was adverse.

But the judgment was based on the verdict of the jury, and was such as the trial court ought to have rendered. If the recovery, within the meaning of the statute, be considered as had at the time of the judgment in the trial court, a point about which there may be some doubt, the judgment would be no bar. And the record of the ejectment cause does not show any other entry or proceeding making him a party to the action. The present suit, treated as a new action of ejectment, may therefore be sustained as to James Boro.

The complainant, Mary Boro, rests her right to sue upon the ground that the appearance entered in her name in the ejectment suit was without any authority from her, and the present bill is drawn with a view to impeach and obtain relief from that judgment upon this ground. The weight of American authority now is that a judgment resting upon the unauthorized appearance of an attorney, may be annulled in equity, upon a bill filed for the purpose: *Shelton* v. *Tiffin*, 6 How., 163; *Harshey* v. *Blackmarr*, 20 Iowa, 161; *Gifford* v. *Thorn*, 1 Stock., 702. Our courts have followed the current: *Jones* v. *Williamson*, 5 Cold., 371; *Coles* v. *Anderson*, 8 Hum., 489. The record leaves no doubt that the eminent counsel of the defendants in the ejectment suit considered himself employed by Wible as guardian of the children of James Boro, and authorized by Wible to make them parties if he deemed it advisable. It is equally certain that Wible himself looked upon the suit as being against him as guardian, and authorized the substitution

of the names of the real owners as defendants. He was in court when the order of substitution was made. The proof, however, is all one way, that Mary Boro was not actually consulted in the matter, and did not authorize the act. Wible testifies that he never obtained her consent, and the counsel says he never saw her. Mary Boro swears that she was not aware of the fact that her name had been used until after the final disposition of the case in this court, and her uncle, Wm. Hidell, to whom she had given a power of attorney to act for her after she came of age, deposes that he was ignorant of the fact until after the final judgment. All of these parties knew, it is true, that the suit was pending, and that it involved the title to the property now in controversy, but mere knowledge of these facts, and even active participation in the conduct of the suit, would not affect a person's rights unless he is an actual party: Code, sec. 3252; *Boles* v. *Smith,* 5 Sneed, 105; *Hillman* v. *Chester,* 12 Heisk., 34. The judgment in the ejectment suit is not, therefore, a bar to the relief now sought, even if the bill be treated as a pure ejectment bill.

The legal title to the lot in controversy was taken, it will be remembered, to Joseph Boro and Geo. W. Wible, as constituting the firm of J. Boro & Co. If Mary Harris acquired the legal title of Joseph Boro by virtue of the execution sale under the Townsend judgment, she acquired it before Joseph Boro and Wible made their conveyance of the lot to the complainants. All that the action of ejectment could, in any event, determine, was that Mary Harris had the

Boro v. Harris.

better legal title. The equitable rights of the complainants, if they have any, as against Mary Harris, would remain unaffected by that recovery. These might be set up in chancery even after a judgment against them at law in an action of ejectment to which the complainants were actual parties.

It is very clear, however, that the complainants have no right to call in question the validity of the defendant's judgment against Joseph Boro by reason of any equities between defendant and Joseph Boro, growing out of the consideration of the note on which the judgment was rendered, the mode in which the note was sued on and judgment recovered, or the state of mutual accounts or indebtedness between them. These are matters which Joseph Boro himself can alone contest. If he has so acted that the proceedings are valid against him, no other person, in the absence of fraudulent collusion, can call them in question. The defendant, Harris, has acquired the legal title and interest of Joseph Boro, whatever they may be, in the lot in controversy.

As early as 1853, James Boro seems to have made a general assignment of all his property to one Jenny, who was afterwards a partner of James Boro, then the book-keeper of J. Boro & Co., and finally one of the guardians of defendants. Jenny admitted that he never acted under the assignment, except, perhaps, to join in the conveyances of some of the property made by James Boro. He was afterwards in partnership with James Boro for two or three years, until 1858, when Boro bought him out. The firm name was J.

Boro & Co.   In 1858, James Boro conducted the same business in the same firm name, the ostensible partners, as held out to the world, being his brother Joseph Boro, and his brother-in-law, Geo. W. Wible· The reason for this arrangement seems to · have been, as expressed by Jenny when examined as a witness, that he could not hold property in his name on account of some New Orleans claims, growing out of the management of a steamboat of which he was at one time the owner, which he was afraid he would have to pay, and upon which suits were, perhaps, pending in Louisiana.   There is in this record no proof of the existence of such claims, nor of the pendency at any time of any suits.   But the fact of such apprehension on his part is fairly exposed by the testimony, and affords the only solution offered for the mode adopted in conducting his business. Neither Wible nor Joseph Boro had much, if any capi ital, and seem to have worked upon a salary, and the payment of family expenses.   The business was continued under the arrangement made in 1858 until the spring or summer of 1862, when it was virtually terminated by the exhaustion of the stock by sales, and the course of the civil war.   Wible says that he expected to share in the profits of the business, in addition to his salary, but there were no profits, and the assets in 1862 belonged to James Boro.   The lot in controversy was bought and paid for with these assets, and the title made to the ostensible members of the firm.

Wible and Joseph Boro being held out to the world

as the only partners of J. Boro & Co., it is very clear that they became partners as to third persons, and personally liable for the firm debts, and entitled to look to the partnership property for reimbursement. It is equally clear that James Boro was in reality a silent partner, and liable as such. Irrespective of the intention of the parties, the legal effect of what was done was to create a partnership between them, and any property bought with partnership assets became at once partnership property, and the title was properly taken to the firm. In this view, all that an individual creditor of either one of the partners could reach by the levy of an execution, or which a purchaser could acquire under the execution sale, would be the interest of that partner, dependent upon a partnership account: *Haskins* v. *Everett,* 4 Sneed, 531. And if the ostensible partners had in fact no interest in the partnership property, the creditor or purchaser, if there were nothing else in the case, would take nothing: *Kelly* v. *Scott,* 49 N. Y., 599; *Hillman* v. *Moore,* 3 Tenn. Ch., 454. Upon the theory of a partnership, real or ostensible, the defendant acquired, by her purchase under the Townsend judgment and execution, only the legal interest of Joseph Boro in the property in dispute after an adjustment of the partnership accounts. And either she or the complainants, as the heirs of James Boro, could come into equity for the taking of the accounts and adjustment of their rights, notwithstanding a recovery in ejectment at law upon the legal title.

The jury, upon the trial of the action of eject-

ment, found as facts that James Boro, at the time of the purchase of the lot in controversy, was not a partner in the firm of J. Boro & Co.; that he was using the names of Joseph Boro and Geo. W. Wible for the sole purpose of transacting his own business, owned and conducted exclusively by himself; and that he used the names of these parties in order to avoid claims which were likely to come against him. The testimony in that case warranted these findings, and the same findings might be made in this case, although Wible, Jenny and Joseph Boro have, in a manner by no means creditable to them, modified their testimony upon the subject of the New Orleans claims, and their sources of information touching them. The substance of these findings is that there was no partnership, but a mere agency resorted to for the reason stated. The trial court and the Commission court, on appeal, differed as to the legal effect of these findings on the rights of the parties to the action of ejectment, the one rendering judgment for the defendant, and the other for the plaintiff. The point is one of grave difficulty. For, while a conveyance in fraud of creditors, without more, would clothe the grantee with the absolute interest, as between the parties, which might be subjected by his creditors, the authorities are hopelessly in conflict upon the question whether the fraudulent grantor could enforce against the fraudulent grantee in undisturbed possession the ostensible consideration of the conveyance: *Gray* v. *Jacobson,* 55 Miss., —; S. C., 1 Memph. L. J., 64. The consideration of the conveyance in question was the man-

agement of the business entrusted to the agents, the payment of the debts of the ostensible partnership of J. Boro & Co., and the accounting for the net surplus assets.

The case as presented in the record now before us renders it unnecessary to determine the point thus raised in the ejectment suit. The proof is that James Boro took possession of the lot in controversy at once upon the completion of the purchase, and continued to hold the same, claiming and using it as his own until his death in 1864. It was then occupied by the Federal authorities as a military prison until sometime in 1865. Then Wible took possession, and used the rents partly to pay the debts of J. Boro & Co., and partly for the benefit of complainants. After the payment of the debts, he held for complainants exclusively. Joseph Boro, it appears, never set up any claim to the property, nor did he ever have possession of it. And on May 17, 1871, he joined Wible in conveying the lot to the complainants. There was a virtual abandonment by both of the grantees of any title to the property except as trustees for the complainants. The title remained in them subject to an admitted equity, which equity originated by act of the parties before the creation of defendant's debt. And neither they nor complainants knew of defendant's levy until after the sale under it.

The defendant's debt against Joseph Boro was created in 1865, fell due January 1, 1869, and was reduced to judgment in 1870. The suit was brought upon the note by her lawyers, and for her benefit in

4—VOL. 13.

the name of the purchaser Townsend, after Townsend had informed the lawyer that the property in controversy did not belong to Joseph Boro, but to the heirs of James Boro. Wible testifies to having given similar information to a son of defendant, now dead, who made inquiry of him as to the facts. But Wible stands in such a questionable attitude before the court by reason of his contradictory statements under oath, that little if any credit should be given to his uncorroborated testimony. Townsend is, however, a disinterested witness. And, inasmuch as the defendant executed a power of attorney to confess judgment on the note in his favor in pursuance of the agreement made by him with her attorney, it is a fair inference that she was advised of Townsend's refusal to sue, or to look to Joseph Boro, and the reason given by him therefor. The judgment was virtually her judgment, and was used by her in paying for the interest of Joseph Boro, when purchased by her at the execution sale.

The rule of *caveat emptor* applies to a purchaser at execution sale in this State. And if at the time of sale the purchaser has actual notice of any legal or equitable right in a third person, especially if possession be held under that right, he will take subject to that right. If he was a creditor antecedent to his purchase, and paid for the purchase by a credit on his demand, he is not a *bona fide* purchaser for value: Freem. on Judg., sec. 366. And, as we have held at this term, it is the settled law of the State that a prior equity will prevail, except in certain cases

falling within the letter or policy of our registration laws, over a subsequent equity and the legal title with notice, or against volunteers with or without notice, a purchaser in satisfaction of an antecedent debt being always treated as a volunteer within the rule : *Anderson* v. *Ammonett,* 9 Lea, 1.

If Joseph Boro, was not a partner of James Boro in the business of J. Boro & Co., the conclusion thus reached necessarily ends the litigation. If Joseph Boro were in fact a partner, the defendant by virtue of her purchase might demand a partnership account with a view to ascertain his interest in the property. No such relief is asked in the present suit, and it sufficiently appears in this record that such an account would be of no avail, and it is so adjudged.

The decree must be reversed, and a decree rendered here in favor of the complainants for the recovery of the property, and rents received by the defendant. Under the circumstances the complainants will pay all costs of the cause.

This opinion, delivered two terms ago, is again made the opinion of the court after the rehearing. The exceptions to the report of the Referees are disallowed, and the decree of the chancellor reversed, and decree will be rendered here in accordance with this opinion. The complainants will pay the costs of the entire cause.