### BRAYTON v. SHERMAN et al.

(Supreme Court, Appellate Division, Third Department. November 21, 1899.)

1. PARTNERSHIP—FRAUDULENT TRANSFER—EVIDENCE.

In an action to set aside as fraudulent a transfer to defendant of certain personal property and book accounts, evidence that the bill of sale of the personal property was signed by both members of the firm, and that some of it was used in the firm's business, and that the transfer of the book accounts contained a list of names of persons described therein as "sundry parties debtors" to the firm, is sufficient proof that the property transferred was the property of the firm, and was transferred by it.

2. SAME—TRANSACTION BETWEEN PARTNERS—EFFECT AS TO CREDITORS.

The fact that a member of a firm has transferred all his interest in the firm property to the other member does not make the property the latter's individual property, so as to authorize him to make a conveyance thereof, valid as against the firm's creditors, to pay his individual debts, where such creditors have no notice of the transfer, and the business was continued at the same place, and under the same name.

Appeal from judgment on report of referee.

Action by George W. Brayton, individually and as assignee and substituted trustee, against Henry L. Sherman, as administrator, and others. From a judgment for defendants, plaintiff appeals. Reversed.

The complaint in this action alleges: That the defendants Sheldon and Lawlover were co-partners in business, carrying on business under the firm name of Sheldon & Lawlover. That on or about the 1st day of June, 1882, the said firm sold, assigned, transferred, and set over a large amount of personal property which was not exempt by law from execution to one Augustus Sherman, consisting of wagons, harness, sleighs, and book accounts, of the value of $1,200. That such property was the property of and belonged to said firm; and that at the time of such assignment the firm of Sheldon & Lawlover was not in any way indebted to him, but that the same was assigned to satisfy a claim of personal indebtedness of the said Lawlover individually, and not otherwise, to said Sherman. At the time of such assignment such firm was insolvent, and had been for some time previous thereto, and that such transfer was made with the intention and contemplation, and with the purpose and intent to hinder, defraud, and delay the creditors of said firm; and that at the time of such assignment, and for some time previous thereto, said firm was indebted to this plaintiff in a large amount. On the 3d day of June, 1882, after making such sale and assignment to Augustus Sherman, the firm of Sheldon & Lawlover made a general assignment of their property, in trust for the payment of their debts, to Darwin W. Sherman, the defendant, who accepted such trust, and qualified as such assignee, and entered upon the discharge of his duties. That afterwards, on the 20th day of September, 1883, the plaintiff recovered a judgment against the said firm of Sheldon & Lawlover for the sum of $1,707.31 damages and $263.94 costs, and that an execution was issued upon such judgment, and returned unsatisfied and unpaid. It also sets up the death of Augustus Sherman, leaving a last will and testament, by which he constituted the defendant Darwin W. Sherman and others executors thereto, and the issuing of letters testamentary thereon to the defendant Darwin W. Sherman and another. That one of the executors so qualifying has since died, leaving the defendant the sole surviving executor under such will. That in the month of November, 1885, proceedings were taken to remove the defendant Darwin W. Sherman as assignee of the firm of Sheldon & Lawlover, and the plaintiff was appointed as such assignee in his place and stead, and has given his bond, properly approved, and entered upon the discharge of his duties. It also sets forth that as such assignee and trustee he demanded from the executors of Augustus Sherman, the defendant Darwin W. Sherman being one of them, all the property herein mentioned as having been assigned, transferred, and set over to the said Augustus Sherman in his lifetime by said firm, and their refusal to give up or surrender them, or any part of them. The answer of the defendant admits that clause of the plaintiff's complaint which sets forth the death of Augustus Sherman, the probate of his will, and the appointment of executors, and the death of one of them, but denies each and every other allegation of the complaint; and for a second answer avers that Augustus Sherman, the defendants' testator, prior to June 2, 1882, loaned and advanced to Thomas Lawlover a sum of money amounting to $1,200 and upward; that the same was used by the said Lawlover as capital in the meat-market business conducted by the said Thomas Lawlover under the name and style of Sheldon & Lawlover; that on the 2d day of June the said Thomas Lawlover transferred to the said Augustus Sherman personal property and book accounts to the amount of $1,165, and that the same were delivered to the said Sherman, and the said $1,165—the purchase price thereof—applied to the debt of said Lawlover to said Sherman. He alleges that John A. Sheldon did not own such property, or any part thereof, but that the whole title to such property was in said Lawlover; that the property sold to said Sherman was purchased with money loaned by him to said Lawlover, or from the proceeds of the business into which said Lawlover placed the said money so loaned by the said Augustus Sherman. Upon the trial it appears that Sheldon & Lawlover commenced doing business in December, 1880. In January, 1881, Sheldon, by an instru-

ment in writing, reciting the fact that he and Lawlover were doing business together under the firm name of Sheldon & Lawlover, in which firm Lawlover advanced money to carry on the same; that for the purpose of protecting and securing Lawlover for all moneys advanced, or that should be advanced thereafter, he sold, assigned, transferred, and set over all his right and interest in such business, and the property and assets of the same then existing, or to grow out of the business thereafter, and giving him the exclusive control thereof, and the right to settle, dispose of, and incumber the same as if he was doing business in his own name, until the said Sheldon should pay into such concern an amount equal to said Lawlover's advances. After the execution of this instrument the business was carried on in the name of Sheldon & Lawlover, just the same as before. No notice of a dissolution of the firm was given, and the business was continued in the same way down to the time of the execution of the assignment for the benefit of creditors. On the 1st day of June, 1882, by an instrument in writing, signed by each of them, the said Sheldon & Lawlover, for the expressed consideration of $665, sold and assigned to Augustus Sherman certain personal property, consisting of wagons, harness, a team of horses, and a pair of bobsleighs. On the 2d day of June, 1882, a list of accounts, headed as follows: "Sundry Parties Debtors to Sheldon & Lawlover," was, by a written assignment, signed by Thomas Lawlover, transferred to Augustus Sherman in the following language:

"Glens Falls, N. Y., June 2, 1882.

"For a valuable consideration, to me in hand paid, the receipt whereof is hereby acknowledged, I hereby sell, assign, transfer, and set over to Augustus Sherman the above demands, and each and every one of them, and all my right, title, and interest in and to the same; intending hereby to also convey any and all interests in the above demands which Sheldon & Lawlover can or may have therein.                    Thomas Lawlover. [Seal]."

On the 3d day of June, a general assignment for the benefit of creditors was made by the said Sheldon & Lawlover. The recovery of a judgment in favor of the plaintiff against the said Sheldon & Lawlover was properly established. It appears that such judgment was for goods sold and delivered at various times between February 10, 1882, and May 27, 1882, and for a promissory note executed February 25, 1882. The issuing of an execution, and its return unsatisfied, was also proved. In fact, all the merely formal facts appear to have been established. The case was tried before a referee. He made his report in favor of the defendant, and from the judgment entered thereon, the plaintiff has appealed to this court.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

C. S. Enches (James H. Bain, of counsel), for appellant.
S. & L. M. Brown (Louis M. Brown, of counsel), for respondents.

HERRICK, J. This case has heretofore been before the court upon appeal. On the former trial the plaintiff recovered a judgment, which was affirmed upon appeal by the general term, and is reported in (Sup.) 5 N. Y. Supp. 602. It was subsequently reversed in the court of appeals, and a new trial granted. See 119 N. Y. 623, 23 N. E. 471. The court of appeals reversed the judgment in favor of the plaintiff upon the ground that there was no proof that the accounts transferred were the property of the firm of Sheldon & Lawlover. Judge Peckham, who wrote the prevailing opinion in the case, says:

"I have looked in vain in this case for some evidence that the accounts alleged to have been transferred to Augustus Sherman were the property of Sheldon & Lawlover. This was a necessary fact to be proved, in order to enable the plaintiff to maintain his action. Nor do I find any evidence of the transfer of any accounts by Sheldon & Lawlover or Lawlover to Sherman."

Then follows a discussion of the testimony permitted to be given by witnesses upon the former trial, which the learned judge held should not have been received. It appears from an examination of the record here that there is evidence now before us which was not presented upon the former trial. The position in which the case now is, is this: The defendant, in his answer, alleges the transfer and delivery to him by Thomas Lawlover, on the 2d day of June, of certain personal property and book accounts, amounting to the sum of $1,165. We have in evidence a written bill of sale signed by both Sheldon & Lawlover, on the 1st day of June, 1882, of certain personal property, consisting of wagons, etc., as before stated, and there is some evidence to show that some of these wagons, at least, had been used in the business carried on under the firm name of Sheldon & Lawlover. Then we have the transfer in writing, signed by Thomas Lawlover, dated June 2, 1882, of a list of accounts, which are characterized by the statement in writing at the top of such list, "Sundry Parties Debtors to Sheldon & Lawlover." It seems to me to be conclusively established by the parol evidence and by this documentary evidence that the personal property and book accounts set forth in the defendant's answer as having been transferred to him on June 2d by Lawlover in payment of money loaned by him to said Lawlover is the same property and the same book accounts as are mentioned in the written instrument I have referred to. In fact, there is very little pretense but what such accounts were accounts contracted in the course of the business carried on by Sheldon & Lawlover, and the wagons, harness, sleighs, etc., were property used by them in such business. The title to the personal property other than the book accounts is derived directly from the instrument signed by the members of such firm. The contention, however, on the part of the defendant is that Sheldon had no interest in this property, that it was in fact Lawlover's individual property, and that, therefore, it could be used to pay his individual debts. I do not think this contention can be sustained. The transfer by Sheldon to Lawlover of all his right, title, and interest in the firm property was not valid as against persons dealing with the firm without notice of such transfer. No notice was given of it, or the fact published, but the business continued to be conducted at the same place, and under the same name. It would appear from the summary statement in the record before us of the judgment roll in favor of the plaintiff that the plaintiff himself sold goods to them as jointly, and also received a note executed by them, and obtained judgment against them thereon. In addition to that, they make an assignment of their effects, signed by each of them, for the benefit of creditors. I know of no provisions of the statute in relation to assignments which allow two or more persons to join in an assignment unless they have joint interests to assign, and persons to whom they are jointly indebted, to protect or distribute their assets among. The instrument of assignment of Sheldon & Lawlover itself shows that there was no intention to dissolve the firm, but that it was made to protect and secure Lawlover for the advancements he had made for the purpose of carrying on the business, and that the assign-

ment was only to last until the contributions by Sheldon to the business should equal those of Lawlover. As between themselves, possibly it may be that Lawlover was, for the time being, at least, the owner of all the co-partnership property; but as to third persons dealing with them as co-partners, and having no knowledge of the agreement between them, it was of no effect. Kelly v. Scott, 49 N. Y. 595. The property, then, belonging to and used in the business of this firm, should first have been appropriated to pay the firm's debts, and the transfer thereof to Augustus Sherman to pay Lawlover's individual debts was void as against the firm's creditors, and the plaintiff was therefore entitled to recover such property, or the value thereof, from the defendant, as executor of the estate of Augustus Sherman, and the judgment should therefore be reversed, and a new trial granted.

The court of appeals, in discussing the testimony upon the former trial, criticised the testimony of one of the witnesses in particular, holding that certain questions put to him, that were objected to, should have been ruled out. I notice upon this second trial, in the examination of the witness Morgan, the same questions were repeated, and the evidence received. Undoubtedly the referee was not aware of the ruling of the court of appeals, but the attorneys should have called his attention to such ruling, and not permitted him to be misled. It seems to me proper to call attention to this matter, lest the same errors be committed upon the next trial.

The judgment appealed from should be reversed, the referee discharged, and a new trial granted, with costs to abide the event. All concur.