# Appeal of Scull et al.

115  141
131  503
115  141
169  416
115  141
182  203
115  141
193  350

1. A. advertised that he would carry on business as A. & Co., "admitting B. and C. to interests." At the same time, he employed B. and C. at a stated annual salary with a contingent interest of a per centage in the net proceeds of the business above a certain amount. A. made declarations that B. and C. were his partners in carrying on the business. B. and C. each signed checks and gave receipts in the firm name. A. confessed judgments to his individual creditors who levied on the property of A. & Co. The creditors of A. & Co. subsequently issued attachments under the Act of 1869, and attached the same property. The property was sold by the sheriff, and the fund arising therefrom was paid into court for distribution. B. and C. filed claims for wages, under the Act of 1872. On distribution, it was *held* (*a*) that B. and C. were not partners with A.; (*b*) that B. and C. were not bound by the declarations of A., made in their absence, without their knowledge or consent; (*c*) that B. and C. were not estopped from denying the partnership; (*d*) that the attachment creditors were not prevented from participating in the distribution by reason of their not having their claims in judgment, but because the property sold was the individual property of A., and his individual creditors were prior in levy and lien; (*e*) that the claims of B. and C. for wages should be allowed.

2. The rights of firm creditors are worked out through the equities of the partners, and where, as in this case, the property sold was individual property, the partners had no equities in it, and the firm creditors had no claim upon the fund, to the exclusion of individual lien creditors.

3. The existence of a partnership may be proved by the separate declarations of each of the alleged partners, but neither of them is bound by the separate declarations and admissions of the others, made in their absence and without their knowledge or consent.

4. York County Bank's Appeal, 8 Casey, 446, followed.

January 7th, 1887. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON and CLARK, JJ., absent.

APPEAL from the Court of Common Pleas, No. 1, of *Philadelphia county*, of January Term, 1886, No. 152.

Appeal of David Scull, Jr., & Brother from the decree of said court, dismissing their exceptions to an auditor's report, and confirming the same.

The fund for distribution by the auditor, Edward Barry, Esq., arose from the sheriff's sale of the personal property of Howard D. Thomas & Co.

The auditor reported, *inter alia* as follows:

For some years prior to January 1st, 1884, David S. Brown, Jr., and Howard D. Thomas carried on a manufacturing business in the city of Philadelphia, under the firm name of David S. Brown, Jr., & Co.

[Appeal of Scull et al.]

Frederick A. Reinstein and Arthur Skeffington had been for years the bookkeeper and superintendent, respectively, of the mills for said firm.

Prior to December 31st, 1883, Thomas arranged to buy out the interest of his partner, Brown, in the business, which arrangement was consummated on the 31st December, when said Thomas gave and executed to said Brown a mortgage for 33,333.33 dollars, secured upon the machinery of the mills at Haddington, where they had been doing their manufacturing, and the firm of David S. Brown, Jr., & Co. was on that day, December 31st, 1883, dissolved by mutual consent.

Thomas's intention was to continue to carry on the same business at the same mills, and being desirous of retaining the services of Reinstein and Skeffington (each of whom was a man of experience in his line or department of the business), he had, about this time, and shortly before it, several conversations with them on the subject of their remaining, and the terms upon which they were to do so.

On the 31st of December, 1883, Thomas handed to Reinstein a paper written as follows:

The copartnership heretofore existing under the firm name of David S. Brown, Jr., & Co., is this day dissolved by mutual consent. The business will be settled by Howard D. Thomas, who alone will sign in liquidation.

DAVID S. BROWN, JR.,<br>HOWARD D. THOMAS.

PHILADELPHIA, December 31st, 1883.

Having bought the interest of David S. Brown, Jr., in the above business, I will continue it under the firm of Howard D. Thomas & Co., admitting Arthur Skeffington and Frederick A. Reinstein to interests from this date.

HOWARD D. THOMAS.

PHILADELPHIA, January 1st, 1884.

He directed Reinstein to make a copy of the same and advertise it.

Mr. Reinstein accordingly made the copy as directed, and the same day ordered the insertion of the notices in *The Press*, and the *North American* in which papers they appeared as above written, on the following day, namely, January 1st 1884.

About the 1st of January, 1884, Thomas presented to Reinstein and Skeffington, for execution, a paper in triplicate, which read as follows:

Memorandum of an agreement made the thirty-first day of December, A. D. 1883, between Howard D. Thomas, trading as Howard D. Thomas & Co., of the first part, Arthur Skeffington, of the second part, and Frederick A. Reinstein, of the

third part.   The said parties agree as follows, namely :   The said Howard D. Thomas employs the said Arthur Skeffington as superintendent of his factory, at Haddington, in the city of Philadelphia, in Pennsylvania, for one year from the first day of January, 1884, at a salary of $2,500, payable in monthly instalments.   In case the net profits of the said business shall exceed twenty-five thousand dollars for the said year, then the said Howard D. Thomas will pay the said Arthur Skeffington an additional salary, which shall be equal to seven and one half per cent. of so much of the said net profits as shall be in excess of the said sum of $25,000, payable only when and as soon as the books of account have been balanced and settled, and the net profits have been fully ascertained.

And the said Howard D. Thomas employs the said Frederick A. Reinstein as bookkeeper of the business of his said factory, at Haddington, for one year, from the first day of January, 1884, at a salary of two thousand dollars, payable in monthly instalments.   In case the net profits of the said business shall exceed twenty-five thousand dollars for the said year, then the said Howard D. Thomas will pay the said Frederick A. Reinstein an additional salary, which shall be equal to seven and one half per cent. of so much of the said net profits as shall be in excess of the said sum of $25,000, payable only when and as soon as the books of account have been balanced and settled, and the net profits have been fully ascertained."

This paper was signed and sealed in triplicate by Howard D. Thomas, Arthur Skeffington and Frederick A. Reinstein, and witnessed by Wm. Stroud.

The new business started on the first of January, 1884, and was carried on, under the name of Howard D. Thomas & Co., until the date of suspension, which was the ninth day of June following.

Reinstein acted as bookkeeper and attended to the correspondence, signing the firm name to letters, without using "per" or "by."   He so signed letters and indorsed checks for deposit only, by the express direction of Mr. Thomas, not given in each instance, but given, at the commencement of the business, as a general direction applicable to all cases. He did not sign checks, notes, bills or acceptances.   These were signed by Thomas only.

Skeffington acted as superintendent of the mills, he being a practical manufacturer of many years experience.   He was in the habit of signing the name "Howard D. Thomas & Co." (without "per" or "by") to the wagoners' receipts, when goods were delivered at the mills.

Neither Reinstein nor Skeffington contributed any capital,

either in money or merchandise, to the business at any time. All money and merchandise in the business was the property of Howard D. Thomas, and amounted, according to Reinstein, to about forty-two or forty-three thousand dollars. In addition to this there was valuable machinery, but it was covered by the mortgage, above mentioned, made by Thomas to Brown.

On the ninth day of June, 1884, the concern of Howard D. Thomas & Co., failed to meet its obligations. The same day there was entered in Court of Common Pleas, No. 1, three judgment notes, each dated June 2d, 1884, payable one day after date, drawn by Howard D. Thomas.

1. One to George Rhoads for twenty-one thousand dollars ($21,000).

2. Another to Morris W. Stroud, executor of William D. Stroud, deceased, for fourteen thousand dollars ($14,000).

3. And the third to Charles Duggin for seven thousand five hundred dollars ($7,500), upon which judgments were entered same day (June 9th, 1884).

The same day a *fi. fa.* was issued on each judgment (the three being placed in the hands of the sheriff simultaneously), and the stock of goods, etc., in the mills of Howard D. Thomas & Co., at Haddington, were levied upon by the sheriff, under said writ, as the property of Howard D. Thomas.

Subsequently, attachments, under the Act of March 17th, 1869, were issued against Howard D. Thomas, Arthur Skeffington and Frederick A. Reinstein, trading as Howard D. Thomas & Co., and lodged in the hands of the sheriff as follows:

4. By David Scull, Jr., *et, al.*, June 19th, 1884, at 9.39 o'clock A. M.

5. By William Johnston, June 19th, 1884, at 12.10 o'clock "M."

6. By James E. Ackroyd, June 20th 1884, at 10.27 o'clock A. M.

7. And by The Sauquoit Silk Manufacturing Company, June 20th, 1884, at 11.10 o'clock A. M.

8. On the third day of July, 1884, judgment was entered against Howard D. Thomas, trading as Howard D. Thomas & Co., for twenty-five thousand seven hundred and fifty dollars ($25,750), on a judgment note dated July 2d, 1884, by, "Howard D. Thomas, trading as Howard D. Thomas & Co.," to James G. Shaw and Charles A. Furbush, and, on the same day, a *fi. fa.* issued thereon, and was placed in the hands of the sheriff.

Under and by virtue of the above attachments (numbered above 4, 5, 6 and 7), the sheriff attached the same property which he had previously levied upon under the *fi. fas.* (num-

bered 1, 2 and 3), and under the *fi. fa.* (numbered above 8) he levied upon the same property again, stating in his return the fact of the previous levies and attachments.

On the 29th of July, 1884, upon presentation of the affidavit of William Johnston, one of the attaching creditors, that the value of the goods, etc., attached was rapidly deteriorating, Court of Common Pleas, No. 2, made order that the sheriff should sell the property attached, giving the same public notice, by hand bills, as is required in sales under writs of *fi. fa.*

On the eighth day of August, 1884, the sheriff sold the property, so levied upon and attached, for the sum of twenty-nine thousand two hundred and fifteen and seventy-one hundredth dollars.

This fund was claimed by the firm and also by the individual creditor; Skeffington and Reinstein also presented claims for wages under the Act of April 9th, 1872.

The Auditor found that there was no partnership relation existing between Thomas and Skeffington and Reinstein. He therefore distributed the fund, first to the cost of Audit, second to the claims of Skeffington and Reinstein for wages, and third to the individual creditors of Thomas, *pro rata.*

The attaching creditor filed, *inter alia*, the following exceptions to the report of the Auditor.

1. The Auditor erred in not reporting that, upon the facts found by him, there was an apparent partnership of Howard D. Thomas & Co., composed of Howard D. Thomas, Frederick A. Reinstein and Authur Skeffington, and that Reinstein and Skeffington, being liable to creditors for the debts of such apparent partnership, had an equity to compel the application of the assets thereof to such debts, which equity entitled the firm creditors to a preference, in the distribution.

2. In not reporting that the acts of Howard D. Thomas estopped him from denying that the assets of a business carried on by him ostensibly as a partnership business were really his individual property, and that this estoppel is available in favor of the partnership creditors, who levied on the assets of the ostensible partnership, as against an individual creditor, who had levied on, but not sold, Howard D. Thomas's interest.

3. In finding that the goods sold under the *fi. fas.* and attachments were the individual property of Howard D. Thomas, and not the property of Howard D. Thomas & Co.

4. In finding that after dissolution, firm creditors have no precedence or rights as against individual creditors.

5. In finding that the agreement dated December 31st, 1883, and signed on or before January 1st, 1884, defined the rights and liabilities of the parties as to creditors, and others

5 Amerman—10

having no knowledge or notice thereof, although made after the publication of the advertisement.

12. In allowing the claims of Skeffington and Reinstein for wages, under the Act of April 9th, 1872.

13. In awarding the fund to the execution creditors, George Rhoads, Charles Duggin, and Morris W. Stroud, executor.

These exceptions the court dismissed and confirmed the Auditor's report, whereupon the appellant took this appeal and assigned the dismissal of said exceptions and confirming said report, for error.

*John G. Johnson,* (*Frank P. Prichard,* *Garsed & Bayly* and *Joseph M. Pile* with him), for appellants.—1. The advertisement in connection with the signing of the firm name by Skeffington and Reinstein and the declarations of Thomas were sufficient to render Skeffington and Reinstein liable to third persons as partners. This gave them an equity as against Thomas to have the assets of the business appropriated to the debts of the business, and this equity inures to the benefit of the joint creditors: Andrews *v.* Schott, 10 Barr, 47; Bank *v.* Gruber, 14 W. N. C., 12; *ex parte* Hayman, L. R., 8 Ch. Div., 11; *ex parte* Arbourn, DeGex, 359; Carvers's Appeal, 5 Casey, 9; *ex parte* Field, 3 Mont. D. & DeGex, 95; Bond *v.* Pollard, 3 M. & W., 358; *ex parte* Rowland, L. R., 1 Ch. App., 420; *ex parte* Morley, 8 Ch. App. 1026; *ex parte* Dear, 1 Ch. Div., 514; *In re* Morse, 13 Bank. Reg., 376; Walter's Appeal, 1 Chester Co. Rep., 278; Kelly *v.* Scott, 49 N. Y., 595; Ryder *v.* Gilbert, 16 Hun., 163; Elliott *v.* Stevens, 38 N. H., 313.

2. Thomas's purchase of goods in the name of Howard D. Thomas & Co., on the representation that Reinstein and Skeffington were his partners, would estop him from setting up an individual ownership, and this estoppel is effective against an individual execution creditor whose levy is subject to every equity that could be enforced against the debtor: Callender *v.* Robinson, 15 N., 454; Silk *v.* Prime, 2 L. Cases in Equity, 394; Carver's Appeal, 5 Casey, 9; Kelley *v.* Scott, 49 N. Y., 599; Ryder *v.* Gilbert, 16 Hun., 162; Elliott *v.* Stevens, 38 N. H., 311.

*Richard C. Dale* and *A. S. Letchworth,* for appellees.—1. Skeffington and Reinstein were not partners with H. D. Thomas either in fact as between themselves, nor was there anything in the terms of their agreement to render them liable to creditors as partners by reason of participation in profits: Edwards *v.* Tracy, 12 P. F. S., 374; Hart *v.* Kelly, 83 Pa. St., 286; Lord *v.* Proctor, 7 Phila., 630; Richardson *v.* Hughett, 76 N. Y., 55.

2. There is no evidence in the case which estops Skeffington and Reinstein from denying that they are partners *qua* creditors.

3. The rule that partnership creditors are to be paid out of firm property before individual creditors, is because of the equity of the partners to have the joint property applied to the payment of the joint debt. Here the property in reality was not joint estate but individual, and hence the equity does not arise. This is settled by York County Bank's Appeal, 8. Casey, 446.

Mr. Justice STERRETT delivered the opinion of the court January 24th, 1887.

Appellants' contention is that they and other attaching creditors of Howard D. Thomas & Co. have a lien on the fund for distribution, superior in right to that of the appellees who are execution creditors of Howard D. Thomas alone.

The fund in court, $23,437.07, represents personal property which was first taken in execution, as the separate property of Howard D. Thomas, on writs of *fieri facias* in favor of appellees, then attached by appellants and others, under the Act of 1869, as the partnership property of Thomas, Skeffington and Reinstein, partners, etc. in the name of Howard D. Thomas & Co., and subsequently sold by the sheriff under said executions and also under orders of the court in the attachment cases. The fund thus produced was claimed by appellants, by virtue of their lien as attaching creditors of the alleged copartnership, and also by appellees, under their respective executions, as proceeds of the individual property of their debtor, Howard D. Thomas.

If there was any attachable interest in the property thus sold, appellants had an undoubted right to be heard on the question of distribution. The fact that their claim was not in judgment could not deprive them of their right to present it and insist upon participating in the distribution by virtue of the lien of their attachment. Whether they were entitled to the fund or any part of it was a question which they had a right to raise and have adjudicated. Their position is analogous to a mechanic having a lien on property sold by the sheriff. He has a right to assert his claim, on the fund realized by the sale, without having first reduced it to judgment, or even without having filed a lien therefor, provided the time for doing so had not expired before the sale. When, as in this case, no issue is demanded by either party, the Auditor entrusted with the distribution has jurisdiction to determine the validity as well as the amount of the claim.

The learned Auditor's findings of fact are very clearly and

fully set forth in his report. One of the conclusions drawn by him is, that in fact no partnership relation ever existed between Thomas, Skeffington and Reinstein in respect of the property in question or anything else; that the business was conducted, by Howard D. Thomas alone, in the name of Howard D. Thomas & Co.; that Skeffington and Reinstein were merely salaried employees of Thomas, having no interest whatever in the goods or property connected with the business, and that the property out of which the fund was realized was owned by Thomas individually. This conclusion is so manifestly correct that it has not been seriously controverted by appellants. Any attempt therefore to further fortify it by reference to the facts or otherwise would be a work of supererogation.

Assuming the correctness of the foregoing conclusions, in connection with the admitted fact that the liens of appellees' executions were prior in time to the attachments, we have a state of facts which brings the case within the rulings of this court in Dorner *v.* Steuffer, 1 P. & W., 198; Baker's Ap., 21 Pa., 76; York County Bank's Ap., 32 Pa., 446, and other cases affirming the same principles. In the case last cited, Keys and Moore executed articles of copartnership in which they agreed, among other things, that Keys should be the exclusive owner of the capital stock until Moore should contribute thereto certain sums of money, which he failed to do. An execution, issued against Keys by a separate creditor, was levied on the stock. Afterwards, another execution against the firm was levied on same goods, and they were sold on both writs. In a contest, between these execution creditors, it was held that the former was entitled to the proceeds on the ground that the equities of the firm creditor could be worked out only through the equities of the partners themselves; and Moore having no equity against Keys, the joint creditor could have none against the prior individual creditor of Keys. Mr. Justice THOMPSON delivering the opinion of the court in that case said: "Between partners themselves the assets of the firm constitute a fund for the payment of their joint liabilities, and each member has an equity which he can enforce to accomplish this result, and consequently a lien to that extent: (6 Ves., 119; 11 Id., 3; Story's Part., Sec. 360,) provided he has an interest in the assets. . . . . . When a joint creditor levies on property of the firm, his execution fixes and attaches to this right to the same extent that it existed in the partners, and hence the preference over a separate execution creditor in the distribution. But this is predicated solely of the fact that there is joint property. Where there is no joint property, there is of course nothing on which the rule can operate. The mere nominal ownership is not enough; there must be an

equity. If that equity never existed a creditor's execution could not attach to any right, amounting to a lien, to have the assets appropriated to a partnership debt. That Moore had no interest in the firm property is found by the Auditor. That this was a necessary conclusion from the article of co-partnership and a failure to comply with it cannot be doubted. . . . . . The property was all individual property, and priority of seizure gave priority of right in the distribution. To the complaint that the property was in appearance firm property, and that it is a fraud on a creditor of the .firm not to hold so in fact, notwithstanding it is in reality not so, it may be answered that a creditor can seize no more than belongs to the debtor, and succeeds only to his rights as defined by the law, and that he can blame no one but himself for becoming a creditor. But, if the rule were not so held, the separate creditor might with more reason complain. He might point to the fact that the property was separate, not joint, and claim that as he was first in lien and seizure, he ought not to be last in distribution, because the property was but partnership in appearance while separate in fact. He might with propriety complain, if a fiction should prevail over the reality."

In view of the conclusive finding of the learned Auditor that the property from which the fund in court was realized was the separate property of Howard D. Thomas and not the property of the alleged firm, the reasoning of the learned judge in the case quoted from applies with great force in this case. Some of the cases relied on by appellants take a different view of the subject, but we regard the doctrine of our own cases as more consonant with reason and the weight of authority.

It follows from what has been said that the controlling fact in the case is that the property represented by the fund for distribution was the separate property of Thomas and not the joint property of the alleged firm, composed of Thomas, Skeffington and Reinstein. But, assuming for the sake of argument that it is not so, and that the case turns on the question whether Skeffington and Reinstein are not estopped by the advertisement, their own acts, etc., from denying that they were Thomas's partners, we think the conclusions of the learned Auditor, as to that question, are correct. The advertisement signed by Thomas alone, wherein he announces that, " Having bought the interest of David S. Brown, Jr., in the above business, I will continue it under the firm of Howard D. Thomas & Co., admitting Nathan Skeffington and Frederick K. Reinstein to interests from this date," did not warrant the inference that they were admitted as partners.

It is entirely consistent with what the Auditor found the

facts to be, viz : that their "interests" were not those of partners, but merely contingent interests in profits, dependent on the realization of net profits in excess of $25,000. The fixed salary of the former was $2,500 and that of the latter $2,000, payable in monthly instalments, coupled with the additional contingency of seven and a half per cent. on the excess of net profits over $25,000. The announcement was that Thomas himself would continue the business in the name of Howard D. Thomas & Co. At most, this was calculated to prompt a prudent man to make inquiry. If so, it was the duty of appellants to inquire what was meant by admitting Skeffington and Reinstein "to interests." If they had performed that duty they would have ascertained that the parties named were merely employees and not partners.

There is nothing in the acts shown to have been done by Skeffington and Reinstein in the course of their employment that would estop them from denying the alleged copartnership relation. While Thomas's declarations, made in their absence and without their knowledge, might estop him, they were not bound thereby. The existence of a partnership may be proved by the separate declarations of each of the alleged partners, but neither of them is bound by the separate admissions of the others of which he has no knowledge. But it is unnecessary to pursue the inquiry further. The learned Auditor has clearly shown that the evidence is insufficient to estop either of the two parties named from denying that they were partners of Thomas.

> Decree affirmed and appeal dismissed at the costs of appellants.