# Richmond.

## ROBINSON v. ALLEN.

### February 7th, 1889.

1. CHANCERY PRACTICE—*Pendency of suit—Decree for account—Different objects.*—Where two suits having same object are pending, decree in one for account, suspends the other. Suit to administer deceased partner's separate property for his separate creditors, and suit to administer partnership property for the partnership creditors, not having the same object, this rule does not apply.

2. IDEM—*Issue out of chancery.*—Direction of issue out of chancery is matter of judicial discretion, reviewable on appeal; and the chancellor is not bound to direct one merely because the evidence is conflicting.

3. IDEM—*Commissioner's report—Exceptions.*—Where a question of fact is referred, and the report is founded on conflicting evidence and is not excepted to on specified grounds, such report cannot be impugned in this court.

4. PARTNERSHIP—*Prima facie evidence—Case at bar.*—All persons sharing in the profits of a concern, are presumed to be partners *quoad* third persons ; but in a case like this, such presumption is repellable by evidence that such relation, *inter sese*, does not exist.

5. IDEM—*Firm debts—Waiver of equity.*—Answer of defendant denying the alleged partnership, is not a waiver of his equity to have the firm assets applied to the firm debts.

6. IDEM—*Surviving Partners—Firm creditors.*—Where surviving partner has not *bona fide* parted with such equity *before* suit to have such assets so applied, he cannot *after* such suit, surrender such equity against the will of the firm creditors.

7. IDEM.—*Appellate practice.*—Where, without objection, court below adopts as basis of its decree, a statement apportioning proceeds of firm assets among proven firm debts, objection thereto cannot be made here.

8. IDEM—*Assets of a deceased partner—Fiduciary debts.*—Where deceased partner's separate assets are insufficient to pay all his debts, those due by him in a fiduciary capacity, are to be paid first. Sections 2660, 2855, Code 1887. *Ashby* v. *Porter*, 26 Gratt. 455.

Appeal from decree of circuit court of Essex county, rendered January 18, 1888, in the cause wherein W. F. Allen & Co. and others were complainants, and John M. Terrell, sheriff of said county, and as such administrator of B. H. Robinson, deceased, and R. H. Coghill, were defendants. The object of the suit was to administer the social assets of the late firm, which was alleged in the bill to have subsisted between the intestate and said Coghill, for the benefit of the social creditors. The decree being adverse to the defendants, they obtained an appeal and *supersedeas* from one of the judges of this court. Opinion states the case.

*A. B. Evans,* and *T. E. Blakey,* for appellants.

*Thomas Croxton, T. R. B. Wright,* and *H. R. Pollard,* for appellees.

LEWIS, P., delivered the opinion of the court.

This was a suit in the circuit court of Essex county for the administration of the assets of the late mercantile firm of B. H. Robinson & Co. The bill alleges that the firm was composed of B. H. Robinson and Thomas A. Coghill, the former of whom is now dead; that the estate of Robinson has been committed for administration to J. M. Terrell, sheriff of Essex county, who has made sale of the partnership effects, and who holds the proceeds of sale subject to the order of the court. And the prayer of the bill is that Coghill and Terrell be made defendants to the suit, that all proper accounts be taken, and for general relief.

The bill was duly taken for confessed, and afterwards, to-wit, at the March term of the court, 1887, a decree was entered referring the cause to a commissioner to ascertain and report the debts and assets of the firm, who composed the firm, and also to report any other matter deemed pertinent by himself or that any party in interest might require him to report, etc.

Afterwards, the answer of the defendant, Coghill, was filed, in which he denied that he was associated in business as a partner with Robinson, or that any partnership existed at any time as charged in the bill, and averred that he, Coghill, was merely a clerk or agent of Robinson, without a fixed salary, and to be paid for his services, in lieu of wages, one-half the profits on the sales of merchandise, in addition to a support for himself and his mother. It was also averred that the business was conducted by Robinson on his own account in the name of B. H. Robinson & Co. The answer of Terrell, administrator, which was filed about the same time, is, substantially, to the same effect. So that the principal question is, whether the property in question is partnership property, and therefore to be first applied to the payment of partnership debts, or whether it is a part of the separate estate of B. H. Robinson, deceased.

In the progress of the cause, sundry petitions were filed by persons claiming to be creditors of the alleged partnership, and praying that payment of their debts be decreed out of the social assets.

The commissioner in due time returned his report, in which, among other things, he reported that at the time of the death of Robinson, and at the time the debts asserted in this cause were contracted (with certain enumerated exceptions), B. H. Robinson and Thos. A. Coghill composed the firm of B. H. Robinson & Co. It is conceded that there are no errors *on the face* of this report. Nor does it appear that any special exceptions were taken to it in the court below, though the decree from which this appeal was taken, recites that the "cause came on to be heard upon the papers formerly read, * * the report of the commissioner, with the exceptions thereto," etc.; "whereupon," the decree proceeds, "the court doth overrule the exceptions to said report, and doth approve and confirm the same." And the court then went on to decree, among other things, that the debts proven in the cause, as partnership debts, be paid out of the moneys in question.

In this decree various errors are assigned in the petition for appeal, which will be considered in the order in which they are presented.

1. The first is, that there was error in entertaining and proceeding in this suit, when there was already a creditors' suit pending in the same court for a settlement of Robinson's estate. The pendency of such a suit was brought to the attention of the court by an averment in the answer of the administrator, but it was not averred nor does it appear that a decree for an account had been rendered in that suit, either at the time the present suit was commenced, or when the answer was filed. And it is only where a decree for an account of debts against the estate of a decedent is made in a suit for the administration of the assets, that the pendency of the suit operates a suspension of all other pending suits of creditors having the same object in view, and the decree may be made in the suit which is first ripe for a decree, whether that suit was first commenced or not. This was the rule recognized in *Stephenson* v. *Taverners,* 9 Gratt. 398, and in numerous subsequent cases. *Harvey's Adm'r* v. *Steptoe,* 17 Gratt. 289; *Kent's Adm'r* v. *Cloyd's Adm'r,* 30 Id. 555; *Paxton* v. *Rich, ante,* p. 378, and cases cited. Besides, here the objects of the two suits were not the same; the one being to administer the separate estate of the deceased partner for the benefit of the separate creditors, the other to administer the partnership property for the benefit of the partnership creditors. Story Eq. Pl. sec. 101; 1 Bart. Ch. Pr. 177.

2. The next assignment of error is, that the circuit court erred in not directing an issue to try the question whether or not there was a partnership. But there is nothing in the record to support this position. Whether an issue shall be directed is, ordinarily, a matter of discretion to be exercised by the chancellor, subject to review on appeal; nor is he bound to direct an issue merely because the evidence is contradictory. On the contrary, if the case be such as ought fairly to satisfy his conscience, an issue, with its attendant delay and expense, ought not to be

directed. 2 Daniel Ch. Pr. 730; *Hord's Adm'r* v. *Colbert,* 28 Gratt. 49; *Keagy* v. *Trout, ante,* p. 390. Moreover, no application was made to the circuit court to direct an issue, nor are there any exceptional features in the case, as presented by the record, to take it out of the general rule. Counsel, in making the assignment of error, seem to have been misled by the language of the authorities to which they refer, which say that whether or not a partnership exists is generally to be decided by a jury; but this language has reference to actions at law, and not necessarily to suits in equity. Hence, the fact that a question of partnership arises in the case, does not affect the general rule in relation to an issue in chancery causes.

3. It is next insisted that the evidence was not sufficient to establish a partnership, and that the circuit court erred in holding otherwise. This is the most important question in the case, and to which the argument in this court was principally addressed. On the one hand it was contended that if one person furnishes money or property and another his personal services or skill in carrying on a business, and is to *share in the profits,* it amounts to a partnership. On the other hand it was argued that to constitute a partnership a partner must not only share in the profits of his companions, but must share in them *as a principal; i. e.,* he must not be a mere agent, factor, or servant, receiving in lieu of wages a sum proportioned to the profits of the business, and therefore that a contract for the employment of agents or servants for a proportion of the profits as *wages* does not make such persons partners.

We think the true rule, sustained by the authorities, is this: that all persons who share the profits of the concern are *prima facie* partners as to third persons, but that in a case like the present, this presumption of partnership may be repelled by showing that the legal relation of partnership *inter se* does not exist. In *Broun's Ex'or* v. *Higginbotham,* 5 Leigh, 583, it was said by Tucker, P., that from an agreement to participate in the profits the law implies a partnership, and, therefore, a liability

for the losses; but he evidently meant profits which are received *as a principal.* Of course, if a person holds himself out as a partner, and thereby lends to the partnership the sanction of his credit, he renders himself liable to third persons as a partner, no matter what the agreement as between the parties themselves may be. But such is not the present case. Here the question in the lower court depended upon the agreement of the parties *inter se.*

"A person may be allowed in special cases," says Chancellor Kent, "to receive part of the profits of a business without becoming a legal or responsible partner. Thus, a party may by agreement receive, by way of rent, a portion of the profits of a farm or tavern, without becoming a partner. So, to allow a clerk or agent a portion of the profits of sales as a compensation for labor, or a factor a percentage on the amount of sales, does not render the agent or factor a partner, when it appears to be intended merely as a mode of payment adopted to increase and secure exertion, and when it is not understood to be an interest in the profits, in the character of profits, and there is no mutuality between the parties." 3 Kent, Comm. 33. See also 1 Colly, Partn. (6th ed.) section 86; *Berthold* v. *Goldsmith,* 24 How. 536; *Wild* v. *Davenport,* 48 N. J. (Law) 129.

It is unnecessary, however, to enter into a discussion of these questions; for whether there was error in holding that a partnership was established in the present case, is a question not open for adjudication on this appeal. Upon that point the commissioner's report, which was confirmed, is conclusive. It is true the question whether a partnership exists or not in a particular case is a mixed one of law and fact, but it is, nevertheless, a proper question to be referred to a commissioner, for although it is not usual to refer abstract questions of law to a commissioner, yet questions of law arising in a case are sometimes so mixed up with the fact to be ascertained, that it is not possible to decide upon the one without giving an opinion as to the others. "In such a case, the commissioner is bound to give his

opinion upon the law as well as upon the matter of fact referred
to him; as in the case of a referee to inquire whether a good
title can be made to land," etc. *Kraker* v. *Shields*, 20 Gratt. 377.

In *Bowers' Adm'r* v. *Bowers*, 29 Gratt. 697, Judge Staples,
speaking for the court, used this language: "That the office of
commissioner in chancery is one of the most important known
in the administration of justice will be universally conceded.
His duties are of a grave and responsible nature; he is the
assistant to the chancellor. There is no question of law or
equity, or of disputed fact, which he may not have to decide, or
respecting which he may not be called upon to report his opinion
to the court. According to the practice of many courts he never
reports the evidence, but only his conclusion. He is confronted
with the witnesses; he sees their deportment, their manner of
testifying, their capacity for recalling and accurately detailing
past occurrences, whereas the court, which only sees the testi-
mony on paper, is denied the opportunity of applying these
obvious tests of accuracy and fidelity." And continuing, he
said: "When, therefore, a question of fact is referred to a com-
missioner, depending upon the testimony of witnesses conflict-
ing in their statements and differing in their recollection, the
court must of necessity adopt his report, unless in a case of a
palpable error or mistake." See also *Stimpson* v. *Bishop*, 82
Va. 190; *Magarity* v. *Shipman*, Id. 784.

Another rule, well settled by the repeated and familiar deci-
sions of this court, is that a report of a commissioner not ex-
cepted to, cannot be impeached before an appellate tribunal in
relation to matters which may be affected by extraneous testi-
mony. Therefore, as was said by Judge Burks, in delivering
the opinion of the court in *Simmons* v. *Simmons*, 33 Gratt. 451,
objections to the decree of a lower court for alleged error in the
report of a commissioner, not appearing on the face of the
report, to avail in this court, must be founded on exceptions to
the report taken in the court below. And not only is this so,
but exceptions to a commissioner's report (being in the nature

of special demurrers), must specify with reasonable certainty, when they are necessary at all, the particular grounds of objection relied on ; or, as the phrase is, the exceptor must " put his finger on the error," that the opposing party may clearly see what he has to meet, and the court what it has to decide, otherwise surprise and injustice might, and probably in most cases would result. Thus, if it be contended that the report is not sustained by the evidence taken before the commissioner, the objection, to avail, must be embodied in a formal exception to the report based upon that ground ; for, peradventure, the opposite party, if the objection is made in the proper form and at the proper time, may be able to obviate it by supplying the alleged want of proof, if any really exists.

In the present case the record does not show that any such exception was taken to the report in the court below. The only evidence that the report was objected to at all, is the recital in the decree appealed from that the cause was heard upon the report and " the exceptions thereto." But what was the nature of those exceptions, or what were the grounds upon which they were based, is not disclosed, and *non constat* they were not based on the ground of the want of notice to the exceptor of the time and place of taking the accounts and depositions, or that the indebtedness reported was excessive, or on some other ground than that upon which the objection to the report in this court has been argued. Indeed, it does not even appear that the exceptions were taken by the appellant, and for aught that does appear, they may have been taken by one or more of the creditors, and not by any one of the defendants. It is quite probable (as in the oral argument at the bar the fact was stated to be), that no formal exceptions were taken at all ; and the most that we can infer from the recital in the decree is, that the exceptions were general. And this, as we have seen, is not sufficient. The latest reported case on the subject is *Nickels* v. *Kane's Adm'r,* 82 Va. 309. In that case objection was made in the argument here to one of the statements returned by the commissioner

with his report, but the objection was not sustained. This court, speaking by Judge Lacy, said: "There is no exception to that statement in the court below, except in general terms, which do not point out any defect or objection to it, and it is too late to object to it here."

This view of the subject renders it unnecessary to review, or even to refer to, the depositions in the record, which were returned by the commissioner with his report, as, for the reasons already stated, the objection to the report, and to the decree confirming it, on the ground of the alleged insufficiency of the evidence, must be overruled. We, therefore, express no opinion as to whether the evidence supports the conclusions of the commissioner or not.

4. The next point made by the appellant is that, conceding the existence of a partnership, the decree is nevertheless, erroneous, because, as he contends, the answer of Coghill is tantamount to a waiver on his part of all claim to have the partnership effects applied to the payment of the partnership debts, and that this waiver is a bar to the present suit.

This position, also, is untenable. In the first place, the answer simply denies the existence of a partnership, and clearly, upon its face, was not intended as a waiver of anything, in the event it should be determined a partnership existed. And, in the next place, although it is true the right of the simple-contract creditors of a partnership to have the social assets specifically appropriated, in equity, to the payment of their debts, in preference to the creditors of an individual partner, is a derivative one—that is to say, it is merely the right to be substituted to the equity the partners have *inter se* to have the property so applied—yet, unless this equity of the surviving partner, in a case like the present, is *bona fide* transferred or parted with before proceedings by the partnership creditors to liquidate the affairs of the partnership are commenced, it cannot afterwards be surrendered to the prejudice of the partnership creditors without their consent; for upon the commencement of such

proceedings, the property is considered as in *custodia legis*, to be administered according to the equities of the parties subsisting at that time. *Case* v. *Beauregard*, 99 U. S. 119; *Fitzpatrick* v. *Flannagan*, 106 Id. 648; *Shackelford's Adm'r* v. *Shackelford*, 32 Gratt. 481, 503; Story, Partn. sec. 360. It is very clear, therefore, that the fourth assignment of error is not well taken.

5. Nor is the fifth, which relates to the action of the circuit court in adopting, as in part the basis of its decree, which is designated in the record as "statement No. 2, made up at the bar of the court." No objection appears to have been made to the statement or to its adoption in the court below, and as it simply apportions the fund derived from the sale of the partnership effects among the partnership creditors whose debts were proven in the cause, and as the aggregate amount of those debts exceeded the amount of the fund to be distributed, it is not easy to see how the appellant has been prejudiced by the action of the court in the particular mentioned.

6. The sixth and last assignment of error is based upon a provision in the decree appealed from, which, in effect, directs the appellant, as the administrator of B. H. Robinson, deceased, to pay the balances due on the debts of the partnership creditors out of the separate estate of his intestate *pari passu* with debts of the preferred or fiduciary estate.

This was erroneous, and justly conceded to be so, as the record shows that the assets of the estate are not sufficient to pay all the debts in full, and the statute which makes the representative of a deceased partner liable for the partnership debts in the same manner as he would have been bound if the debts had been contracted by the members of the concern severally as well as jointly, otherwise than as partners, does not change or affect the order in which the assets of the decedent are to be applied in the payment of debts as prescribed by the statute upon that subject; that is to say, where there is a deficiency of assets to pay all the debts, those debts due by the decedent as personal

Opinion.

representative, guardian, etc., are to be paid before anything is applied to the payment of partnership debts, or to the payment of any other debts not of superior dignity. Code, sec. 2660; Id. sec. 2855; *Ashby's Adm'r* v. *Porter*, 26 Gratt. 455; *Straus* v. *Kerngood*, 21 Id. 584.

The decree will therefore be reversed in this particular, and in all other respects affirmed.

DECREE REVERSED IN PART AND AFFIRMED IN PART.