# Wytheville.

## JOHNSON V. WILLIAMS AND OTHERS.

### June 9, 1910.

### Absent, Harrison, J.

1. PARTNERSHIP—*Rights of Social Creditors—Ostensible Partners—Liability of Assets of Ostensible Firm—Estoppel.*—Social creditors have no right to have their debts satisfied out of the social assets except through the equities of the partners between themselves, hence if there is no partnership there are no equities to which creditors can be substituted. If one not a partner and having no interest in the firm permits himself to be held out as a partner he renders himself personally liable to creditors of the firm, and has a right of action against the real debtor for any sum he may have to pay, but he has no lien therefor on that debtor's property. As between themselves he is a mere surety for the real debtor with no higher rights than any other surety. As to creditors of the firm he is estopped from denying his liability as a partner, but this equity is between him and the creditors. Neither member of the *ostensible* firm is estopped from denying the partnership as between themselves.

2. PARTNERSHIP—*Ostensible Partner—Mortgage to Secure Individual Debt—Rights of Social Creditors.*—If an individual, owning all the assets, conducts business in the name of himself and another who is not a partner and has no interest in the business, the latter is an ostensible partner and liable to the creditors of the firm, but a mortgage given upon such assets by the real owner thereof to secure an individual debt has priority over the creditors of the firm. There are no equities between the ostensible partners, and, there being neither a partnership nor partnership property, there is nothing to which its creditors can be substituted.

3. PARTNERSHIP—*Ostensible Firm—Denial of Partnership—Estoppel.*—There can be no equitable estoppel between parties where neither has been misled by the conduct of the other. To hold

that the members of an ostensible firm are estopped to deny that the property in the possession and use of the ostensible firm is partnership property is to ignore the principles upon which the doctrine of equitable estoppel is based, and to declare equities between the ostensible partners which have no existence in fact.

Appeal from a decree of the Circuit Court of Isle of Wight county. Decree for complainants. Defendant W. E. Johnson appeals.

*Reversed.*

The opinion states the case.

*J. N. Sebrell, Jr.,* for the appellant.

*James U. Burges, E. H. Williams, Geo F. Whitley,* and *R. W. Withers,* for the appellees.

BUCHANAN J., delivered the opinion of the court.

It appears from the facts agreed that G. H. Johnson was the sole owner of a hardware business in the town of Smithfield, which was conducted under the name of G. H. Johnson & Company. He was also the sole owner of an undertaking business, conducted in the same town but at a different house under the name of Johnson & Seward. Seward owned no part of the business, received none of the profits, but occasionally worked in the undertaking establishment, for which he received pay for the time he worked. With Seward's knowledge his name appeared on the sign in front of the house in which the undertaking business was conducted, also on letter heads, bill heads and stationery generally. Orders for goods for the undertaking business were signed "Johnson & Seward," and notes evidencing indebtedness therefor were signed in the same manner, Johnson making the orders and the notes.

On February 1, 1908, Johnson being indebted to W. E. Johnson in the sum of $1,500 for money advanced and surety-

ship undertaken, executed a writing in form of a bill of sale, but in fact a chattel mortgage, on all the goods and stock in the undertaking business to W. E. Johnson to secure the said indebtedness, which paper was duly recorded on the same day. On the 20th of the same month, Johnson, being insolvent, executed a deed of assignment to E. H. Williams and two other persons as trustees, conveying all his property of every kind for the benefit of all his creditors *pro rata.*

The trustees in the deed of assignment filed their bill asking to administer the trust under the direction of the court, making G. H. Johnson, their grantor, and W. E. Johnson, the chattel mortgagee, parties defendant. Neither Seward nor the creditors of Johnson were made parties.

Upon a hearing of the cause, the trial court held that the chattel mortgage, although prior in time to the general assignment, was subordinate to that assignment, and that the chattel mortgagee was entitled to receive nothing under it until all the creditors of G. H. Johnson, trading as Johnson & Seward, had been paid in full, directed the trustees to so distribute the proceeds of the undertaking business and dismissed the bill. From that decree this appeal was taken.

The second error assigned (and in the view we take of the case the only one that it is necessary to consider) is, that the trial court erred in holding that the creditors of Johnson in the undertaking business had a lien on the assets of that business superior to the chattel mortgage of W. E. Johnson.

Assuming (and we cannot do more in this case as neither Seward nor the creditors are parties to this suit) that Seward was and is personally liable to the creditors of Johnson in the undertaking business, as ostensible partner, on the ground of estoppel, does that have the effect of giving the creditors of the ostensible firm the right to have the property which was in the possession and use of that firm applied to the satisfaction of their debts in priority to the claim of W. E. Johnson, the individual creditor of G. H. Johnson?

The cases are not in harmony upon this question. Some ·support the view that the creditors of the ostensible partnership have such priority, (see *Kelly* v. *Scott*, 49 N. Y. 595; *Hillman* v. *Moore*, 3 Tenn. Chy. 454; *Thayer* v. *Humphrey*, 91 Wis. 276, 64 N. W. 1007, 51 Am. St. Rep. 887, 30 L. R. A. .549, and cases cited; *Van Kleeck* v. *Hammell*, 87 Mich. 599, 49 N. W. 872, 24 Am. St. Rep. 184; *Adams* v. *Albert*, 155 N. Y. ·356, 49 N. E. 929, 63 Am. St. Rep. 675) ; others that they have .no priority, (see *Kerr* .v. *Potter*, 6 Gill (Md.) 404; *Reese* v. .*Bradford*, 13 Ala. 846; *Soull's Appeal*, 115 Pa. St. 141, 7 .Atl. 588; *Broadway Nat'l Bank* v. *Wood*, 165 Mass. 312, 43 N. E. 100, and cases cited). The weight of authority seems to be in favor of the latter view, 30 Cyc. 395; *Broadway Nat'l Bank* v. *Wood*, *supra*.

While the question seems to be one of first impression in this jurisdiction, the principles by which it is to be determined are, .as it seems to us, well settled.

In *Shackelford* v. *Shackelford*, 32 Gratt. 481, 503, President :Moncure gives the reason why the social creditors of an actual ·partnership have priority over the individual creditors of the ·partners in the distribution of the social assets. He says: ·"We know that ordinarily a partnership estate is liable to the payment of the debts of the firm in preference of the individual ·debts of the partners. This is the right of the individual partners *inter se*. The creditors of the partnership have no ·such right of priority over the creditors of the partners individually, but only by substitution to the rights of the partners *inter se*. The partners may release this right and the creditors of the partnership cannot complain, for it is not their right except subject to the disposition and control of the partners themselves to whom it belongs."

In *Robinson* v. *Allen*, 85 Va. 721, 729, 8 S. E. 835, 839, it was held that the right of the simple contract creditors of a ·partnership to have social assets specifically appropriated in

equity to the payment of their debts in preference to the crditors of an individual partner, was a derivative one—that it was "merely the right to be substituted to the equity the partners have *inter se* to have the property so applied. . . ."

And in *Millhizer, &c.* v. *McKinley, &c.*, 98 Va. 207, 209, 35 S. E. 446, 447, Judge Riely, speaking for the court, says, that ordinarily a partnership estate is liable to the payment of the debts of the firm in preference to the individual debts of the partners. "This is the right of the partners *inter se.* The creditors of the partnership have no such right of priority over the separate creditors of the partners otherwise than by substitution to the rights of the partners *inter se.* The partners may release this right, and if they do so *bona fide*, the creditors cannot complain, for it is not their right, except subject to the proper disposition and control of the partners themselves."

The social creditors having no right to have their debts satisfied out of the social assets, except through the equities of the partners between themselves, it would seem to follow that if there be no partnership there are no equities to which such creditors can be substituted. If one holds himself out as a partner, or permits himself to be so held out when he is not a partner, and has no interest in the assets in the possession of the ostensible firm, out of what does his equities grow? The fact that his conduct caused the creditors of the ostensible firm to give it credit will make him personally liable to such creditors and give him a right of action against the real debtor for any sum that he may have to pay; but it does not give him a lien therefor on that debtor's property. By his conduct he has become liable for the debts of the ostensible firm, but as between himself and the real debtor he is a mere surety, and with no higher rights than any other surety. As between him and the creditors of the ostensible firm he is estopped from denying his liability as a partner, but this equity is between him and the creditors. Neither he nor the other members of the ostensible

firm are estopped from denying the partnership as between themselves. Neither was misled by the other's conduct, for they knew from the begining that there was no partnership. There can be no equitable estoppel between parties where neither has been misled by the conduct of the other. To hold as some courts do that they or either of the members of the ostensible partnership are estopped to deny that the property in the possession and use of the ostensible firm is partnership property, is to ignore, as it seems to us, the principles upon which the doctrine of equitable estoppel is based, and to declare equities between the ostensible partners which have no existence in fact.

If the creditors of an actual partnership have no independent right to have the social assets subjected to the payment of their debts in preference to the creditors of the individual partners, but their right to such priority is a derivative one by substitution to the rights of the partners between themselves, the creditors of an ostensible partnership can only have this right of priority by a like substitution to the equities of the partners between themselves, unless the creditors of an ostensible partnership have rights superior to the rights of the creditors of an actual partnership. This, of course, cannot be so. Since, as we have seen, there are no equities between the ostensible partners; there being neither a partnership nor partnership property, there is nothing to which its creditors can be substituted.

In *Broadway Nat'l Bank* v. *Wood*, *supra*, the court in discussing the right of partners to have partnership property. first applied to partnership debts, said: "In applying the foregoing doctrine to cases where a person is ostensibly, but not actually, a member of a partnership, and is therefore under a personal estoppel, to deny his liability it follows that a creditor who, by reason of this estoppel, can maintain a personal action against him, cannot extend his estoppel, so as to bind the property which was in possession and use of the actual

partners. The obstensible partner himself has no equity to have the property applied to the payment of the claims upon which he is liable and therefore the creditors holding those claims who are merely subrogated to his rights and equities, have no such equity."

In *Bixler* v. *Kresge*, 169 Penn. 405, 32 Alt. 414, 47 Am. St. Rep. 920, the question was whether the creditors of an alleged partnership had priority over the individual creditor who levied an execution on the alleged firm property. It appeared in that case that one of the alleged partners was not in fact a partner, but had permitted himself to be held out as such when he was in fact a hired man working for wages. The court in its opinion, in discussing that question, said: "Between the partners themselves the assets of the firm constitute a fund for the payment of their liabilities, and each member has an equity which he can enforce to accomplish this result, and of consequence a lien on the property to that extent. When a creditor levies on the property of a firm, his execution fixes and attaches to this right to the same extent that it existed in the partners, and hence the preference over a separate execution creditor in the distribution. All this is predicable of a case of joint property only. But where there was no joint property the rule has nothing to operate on. The mere name is not enough in such a case; there must be an equity. As the equity never existed, a creditor's execution would not attach to any right amounting to a lien to have the assets appropriated to a partnership debt. . . . The appellant cannot work out his equities through the partners, for these as such did not exist *inter se*, and the individual owner could not give him this right of a prior execution against him individually."

And the same court, in *Scull's Appeal*, 115 Pa. 141, 7 Atl. 588, said: "The rule that joint creditors are entitled to priority over separate creditors in the distribution of a joint estate applies only where there is such joint estate for distribution. Where there is no such joint estate, the creditor who first acquired a

lien upon the property is entitled to the fund arising from a sale thereof in preference to subsequent creditors.  See *Goldthweit* v. *Janney,* 102 Ala. 431, 15 South, 560, 28 L. R. A. 161, 48 Am. St. Rep. 56; *Smith* v. *Smith,* 87 Iowa 93, 54 N. W. 73, 43 Am. St. 370; *Glenn* v. *Gill,* 2 Md. 1, 15; *Donor* v. *Stauffor,* 1 Pen. and W. (Pa.), 198, 21 Am. Dec. 370; 30 Cyc. 395-6.

The creditors of Johnson, trading as Johnson & Seward, having no right to have the assets of the undertaking business subjected to the payment of their debts in preference to the individual creditors of Johnson, it follows that the chattel mortgage of W. E. Johnson, being prior in time, has priority over the general assignment of G. H. Johnson.

The decree appealed from must be reversed and the cause remanded to the circuit court to be proceeded with in accordance with the views expressed in this opinion.

*Reversed.*