## Appeal of the York County Bank.

A. and B. entered into partnership, and, by their articles, agreed, that A. should have the exclusive ownership of the capital stock, until B. should contribute certain sums of money thereto, which was not done; an execution was issued against A., by a separate creditor, and levied on the stock; afterwards, another execution was issued against the firm, by a joint creditor, and levied on the same goods: *Held*, that the separate execution-creditor was entitled to the proceeds of sale.

The equities of the joint creditors can only be worked out through the medium of those of the partners themselves; and B. having no equities as against A., the joint creditors could obtain none against the prior separate execution.

In the absence of proof, that B. had contributed the sums stipulated in the articles of partnership, it is to be presumed they never were in fact contributed.

APPEAL from the District Court of *Philadelphia.*

This was an appeal by the York County Bank, from the decree of the court below, distributing the proceeds of a sheriff's sale of personal property, levied on successively as the property of John L. Keys, and of John B. Moore & Co.

On the 20th November 1855, John B. Moore and John L. Keys entered into partnership, and the following articles were executed between them:—

"Philadelphia, November 20th 1855.

"This agreement, made this twentieth day of November, one thousand eight hundred and fifty-five, between John B. Moore of the city of Philadelphia, and state of Pennsylvania, of the one part, and John L. Keys of the said city and state, of the other part, *witnesseth :* that the said parties hereby form a partnership in the sale of horses and a general livery business, under the following conditions, to wit:—

"1st. The said John L. Keys is to furnish all the necessary capital to start and carry on the business, to an amount not exceeding three thousand dollars, unless otherwise arranged in writing hereafter; and to have exclusive ownership of the whole, until the said John B. Moore places in the concern certain sums as specified hereinafter.

"2d. The said John B. Moore is to place in the concern, as fast as possible, either from his share of the earnings of the concern, or from such source as may seem best to him, such amounts as seem best to him; *provided*, that in case the concern makes one thousand dollars nett profits, that the said John B. Moore will subsidize at least four hundred dollars, and so on in that proportion—or in case it should nett less, whatever amount he can spare, at least not less than one hundred dollars per annum.

[Appeal of the York County Bank.]

" 3d. The said partners shall share the profits on the business equally, the shares to be disposed as per the foregoing article.

" 4th. The said parties shall not make any contract relating to or involving the business in any manner, without the consent of the other first had.

" Witness our hands and seals, the day and date above written.

JOHN B. MOORE. [L.S.]
JOHN L. KEYS.  [L.S.]

" Witnesses, { N. BENEDICT,
              { P. H. KEYS."

On the 20th June 1856, a *fi. fa.* in favour of David Taggart *v.* John L. Keys, for $9700, was placed in the sheriff's hands, to which he made the following return :—

" Levied, June 20th 1856, on the right, title, and interest of defendant in certain personal property, consisting of horses, carriages, sleighs, harness, and straw, contained in stables, on north side of Arch street, west of Broad street; and also upon household furniture contained in building adjoining said stables; and sold said property, August 4th 1856, by virtue of this writ, and also two other writs which afterwards came into my hands, one of David Taggart *v.* Defendant, to June Term 1856, No. 807, and the other of The York County Bank *v.* Moore and Keys, September Term 1856, No. 6; the proceeds of sale amounting to two thousand two hundred and twenty-six dollars and forty cents ($2226.40.)"

The *fi. fa.* of Taggart *v.* Keys, June Term 1856, No. 807, was set aside by the court on the 1st of September 1856.

On the 4th August 1856, a judgment by confession was entered in favour of The York County Bank, against John B. Moore and John L. Keys, trading as John B. Moore & Co., for $1580.35, and a *fi. fa.* was immediately issued thereon, and placed in the sheriff's hands.

To this *fi. fa.* the sheriff returned as follows :—" Levied on personal property of defendants, August 4th 1856, subject to the lien of the levy made under two certain executions from the District Court, of June Term 1856, Nos. 545 and 807, as by reference to the return on said executions will fully appear; and sold the said property, August the 4th 1856, for twenty-two hundred and twenty-six dollars and forty cents."

It did not appear how far the terms of the partnership, as to the capital, had been complied with by the partners; but there was no question that all the property employed in the business at the time of the levy, had been furnished by Keys alone.

The auditor appointed to report distribution of the fund, after providing for the payment of rent and other claims thereon, awarded the sum of $1064.50 to the York County Bank, as a

joint creditor of the firm.  Exceptions were filed to his report by David Taggart, which were sustained by the court below, and the fund decreed to be paid to the exceptant.  The following opinion was delivered by HARE, J.:—

"In general, the law regards all creditors as standing on the same footing, and entitled to no other preference than that which may arise from superior diligence, or the preference given by the debtor.  When, however, a partnership is in question, the partnership creditors have a priority over all others, founded not upon any superiority of merit or priority of right on their part, but on the equity of the partners, as between themselves, to have the partnership assets appropriated to the payment of the debts of the firm in the first instance, and before any portion is applied to the use of the partners individually, or of those claiming under them.  In other words, the priority of the partnership creditors is founded upon and grows out of the contract of partnership; it belongs primarily to the partners, and only secondarily and derivatively to those who deal with them, and whose dealing is founded upon and descends from theirs.  It might naturally follow, and has been repeatedly held in Pennsylvania, that the right in question may, like most others, be released or extinguished by those to whom it belongs, and for whose benefit it was called into being, and that if once waived or parted with by them, it cannot afterward be set up by third persons.  The law was so held in Doner v. Stauffer, 1 *Penn. R.* 198, which is fully sustained in Baker's Appeal, 9 *Harris* 76, as well as by the cases in many of the other states of the Union, Ladd v. Griswold, 4 *Gilman* 25; Reese v. Bradford, 13 *Alabama* 838.  Hence, nothing is better settled, at least in this state, than that the partners may, by a subsequent act or agreement, give that priority to their separate creditors, which would otherwise belong to those of the firm, and there can be no valid reason, why the same result should not follow from stipulations made before any debts are contracted, and simultaneously with the formation of the partnership.  Such a provision merely exempts the assets in question from the joint dominion of the firm, without altering the relation between the parties in any other particular.  It takes nothing from the liability, or, in one sense, from the rights of the partners; and simply deprives them of a lien which might otherwise have been enforced for their benefit, and that of those dealing with them, for or on the faith of the partnership.  The case now before us has its origin in an agreement between John B. Moore, of the one part, and John Keys of the other, by which it was stipulated that they should enter into partnership; that Keys should furnish all the capital necessary at the outset, not exceeding $3000, and should retain the exclusive ownership of the whole, until Moore had contributed a certain proportion of the profits of the business, which was not to be less than 40 per cent.

if the profits amounted to $1000. The auditor reports that it did not appear how far these terms had been complied with by the partners, but that all the capital employed in the business at the time of the levy had been furnished by Keys alone. As this statement, which is all we have on the point, does not show that the condition, on which alone the capital furnished by Keys was to become joint property, has been performed, we must regard it as being still unfulfilled, and as interposing an insuperable barrier to any claim on the part of Moore, to that which he has failed to pay for, and which he expressly stipulated should remain the property of another until that had been done which still remains unaccomplished. All pretence of right in Moore being thus at an end, there can be none on that of those who claim under him as creditors or purchasers, and the case is consequently brought down to a contest between the separate creditors of Keys, who have the advantage of a priority of levy, and the joint creditors of Moore and Keys, who can deduce no title from Moore to property in which he had nothing, and who are consequently compelled to rely solely on the title of Keys. Both parties being, therefore, on the same footing in point of right, the superiority must remain with those who were first in point of time.

"We are therefore of opinion, that the auditor erred in awarding $1064.50, part of the fund in court, to the York County Bank as a joint creditor, instead of awarding it to David Taggart, a separate creditor; and direct that so much of his report be set aside, the rest to be confirmed absolutely."

From this decree the present appeal was taken.

*B. H. Brewster* and *Oehlschlager*, for the appellant, cited *Smith's Mercantile Law* 23; *Bissett on Partnership* 60; *Story on Partnership*, §§ 10, 89, 90; Waugh *v.* Carver, 2 *H. Bl.* 246; Doner *v.* Stauffer, 1 *Penn. R.* 203; Ex parte Hodgkinson, 19 *Ves.* 291; Ex parte Langdale, 18 *Id.* 300; Taylor *v.* Fields, 4 *Ves. Jr.* 396; King's Appeal, 9 *Barr* 124; *Collyer on Partnership* 472; Taylor *v.* Henderson, 17 *S. & R.* 456; Knox *v.* Summers, 4 *Yeates* 477; 8 *W. & S.* 63; 24 *Wend.* 396; 2 *Johns. Ch.* 548; 9 *Greenl.* 28; Baker's Appeal, 9 *Harris* 82; Deal *v.* Bogue, 8 *Id.* 233; Lucas *v.* Laws, 3 *Casey* 211; Cooper's Appeal, 2 *Id.* 262; 3 *Kent Com.* 32; Bond *v.* Pitard, 3 *M. & W.* 357; Grace *v.* Smith, 2 *W. Bl.* 998; Hesketh *v.* Blanchard, 4 *East* 144; Gill *v.* Kuhn, 6 *S. & R.* 338; Purviance *v.* McClintee, *Id.* 260; Winship *v.* Bank of U. S., 5 *Pet.* 529, 561; Coover's Appeal, 5 *Casey* 9.

*A. V. Parsons*, for the appellee, relied on the opinion of the court below, and cited in addition, Baker's Appeal, 9 *Harris* 82; Doner *v.* Stauffer, 1 *Penn. R.* 204; Ladd *v.* Griswold, 4 *Gilm.*

25; Reese *v.* Bradford, 13 *Ala.* 838; Glenn *v.* Gill, 2 *Maryland* 16; Rice *v.* Barnard, 20 *Verm.* 479; *Story on Partnership*, § 372; Ex parte Peel, 6 *Ves.* 604; Ex parte Williams, 11 *Id.* 5.

The opinion of the court was delivered by

THOMPSON, J.—The opinion of the learned judge of the District Court, on the points involved in this case, is so entirely satisfactory that we need add but little to what is therein laid down.

Taggart, the appellee, had the first execution and levy on the property from which the fund for distribution arose, but it was against Keys alone. The York County Bank issued and levied subsequently on an execution against John B. Moore & Co. With these writs in his hands, the entire stock alleged to have been partnership effects was sold by the sheriff, and the money brought into court for distribution. The appellant claims to have his execution, although subsequent in time, first satisfied out of the proceeds of sale, on the ground that his was a partnership debt, and the property sold was partnership property. The appellee claims the priority of satisfaction, on the ground that, as between the partners, there was no joint property; that it all belonged to Keys, and that, as his separate creditor, he is entitled to be paid out of it his individual debt in its order of priority. The auditor appointed by the District Court to make distribution of the proceeds of the sale, finds that, by the terms of the articles of copartnership entered into between Moore and Keys, on November 20th 1855, "Keys was to furnish all the capital, and to have exclusive ownership of the whole, until the said John B. Moore places in the concern certain sums as specified thereinafter."

The appellant complains that the court below erred in determining, that under the stipulation, the exclusive possession of the property remained in Keys, notwithstanding the creation of the firm, unless Moore contributed his proportion of funds to the concern, and that as it did not appear that he had done so, the articles of copartnership must be regarded as unfulfilled; and in decreeing distribution first to the execution of the appellee.

As between the partners themselves, and as necessary to define and fix their respective interests, something was to be done, essential to its completion as an executed contract, namely, the contribution of the stipulated funds by Moore. This was a positive act, prescribed by the agreement of the parties, as clearly evidenced by the written contract itself. He was to have no possession, and certainly no property in the effects, unless the consideration, in whole, or in part, necessary to invest him with an equity, were paid. A negation of any title, unless there should be a compliance, by express words in the article, was as unnecessary as it would be unusual. The law settles the relation of parties without this, if the condition upon which an interest is to

vest is not complied with, and the possession is not changed. Here an interest was to vest, on contribution according to the agreement by Moore. There is no evidence that he did contribute, and in the absence of proof of this essential act to constitute him a joint owner, the fact must be taken that it did not exist. The law deals thus with all affirmative necessary facts—if not proved, they do not exist, in contemplation of law, in the process of arriving at legal conclusions. The court could deal with it in no other way, and committed no error in so dealing with it. No doubt the advertisement of the partnership, and holding out to the world that it existed in a complete form, was quite sufficient to render Moore, in his private estate, answerable for deficiencies in means to satisfy creditors of the firm, but this does not change the relation of the parties to the firm as between themselves. And this brings us to the question of the rights of creditors, in regard to the property claimed as partnership property.

Between partners themselves the assets of the firm constitute a fund for the payment of their liabilities, and each member has an equity which he can enforce to accomplish this result, and of consequence a lien on the property to this extent—6 *Ves.* 119; 11 *Ves.* 3; *Story on Part.* § 360—provided he has not parted with it. But if he has sold out, relinquished, or never has in fact, as in the present case, consummated an interest by compliance with his agreement, there can be no lien. Now it is well settled, beginning with Ex parte Ruffin, 6 *Ves.* 119, and recognised ever since in England, and in most of the states of the Union, and in our state, that the equities of creditors must be worked out through the medium of that of the partners: Baker's Appeal, 9 *Harris* 76. When a creditor levies on the property of a firm, his execution fixes and attaches to this right to the same extent that it existed in the partners, and hence the preference over a separate execution-creditor in the distribution. All this is predicable of a case of joint property only. But where there was no joint property, the rule has nothing to operate on. The mere name is not enough in such case—there must be an equity. If that equity never existed, a creditor's execution could not attach to any right, amounting to a lien, to have the assets appropriated to a partnership debt. That Moore has no interest in the firm property is found by the auditor. That this was a necessary conclusion from the article of copartnership, and a failure to comply with it, cannot be doubted. In fact, that the very appearance of claim was renounced by Moore, before the execution was issued by the appellant, was also an ascertained fact by the auditor. This being so, the property levied on was individual property in fact, although seized in the firm's name. The appellant cannot work out his equity through the partners, for they, as such, did not exist, *inter se,* and the individual owner could not give him

[Appeal of the York County Bank.]

this right over a prior execution against him individually. The property was all individual property, and priority of seizure gave priority of right in the distribution. To the complaint that the property was in appearance firm property, and that it is a fraud on a creditor of the firm not to hold it so in fact, notwithstanding it may not have been so, it may be answered, that a creditor can seize no more than belongs to the debtor, and succeeds only to his rights as defined by law, and that he can blame no one but himself for becoming a creditor. But if the rule were not so held, the separate creditor might with more reason complain; he might point to the fact that the property was separate, not joint, and claim that as he was first in lien and seizure, he ought not to be last in the distribution, because the property was but partnership in appearance, while separate in fact. He might with propriety complain, if a fiction should prevail over the reality. This whole doctrine, however, I consider settled by the cases of Doner *v.* Stauffer, 1 *Penn. R.* 198, and Baker's Appeal, 9 *Harris* 76, and they fully sustain the ruling of the learned judge of the District Court.

Decree affirmed at the costs of the appellant.

READ, J., dissented.