Bixler & Correll, Appellants, v. Kresge & Green.

[Marked to be reported.]

169 405
182 205
169 405
193 350

*Wages—Saw logs—Execution—Evidence—Act of June 12, 1879.*

While the provisions of the act of June 12, 1879, P. L. 176, giving a preference to the wages of laborers engaged in cutting saw logs, must be strictly complied with, there is no particular grade of proof required to establish the fact that the wages were earned in the manner contemplated by the act, different from the measure of proof required in ordinary cases.

Where such laborers positively testify that the amounts which they claim were earned in the manner contemplated by the act, and an auditor reports in favor of their claims, and the employers who were present at the audit are not called to disprove the claims, the Supreme Court will not reverse the finding of the auditor.

*Partnership—Partner's equity—Evidence.*

In a contest between the partnership creditors of an alleged partnership and the individual creditors of one of the alleged partners, if it appears that no partnership actually existed between the parties, although they held themselves out to the world as partners, there is no equity to support

the claims of the partnership execution creditors as against the prior execution creditors of the individual partner who is the real owner of the assets.

Where a boy under age permitted himself to be held out to the world as a partner of another person, but was really employed at a salary, and contributed no property to the business, and after he became of age repudiated his obligations on joint notes which he had signed with his alleged partner, he has no equity as a partner which will entitle the creditors of the alleged firm to a preference over the individual creditors of the partner who was the real owner of the assets levied upon as the property of the firm.

Argued March 12, 1895.   Appeal No. 37, Jan. T., 1895, by Bixley & Correll, from order of C. P. Monroe Co., confirming auditor's report, distributing proceeds of sheriff's sale.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exception to auditor's report.

The fund for distribution was raised by the sale of the personal property of Jefferson D. Kresge and of the alleged firm of Jefferson D. Kresge and Oscar Green. .

The auditor. reported the facts to be as follows:

" The validity of the following labor claims was contested, for the following reasons:—

" That of Oscar Green, because he was a partner in the firm of Kresge & Green, and one of the defendants in the executions.   Those of Chas. Eschenbach, Edwin Keiper, Chas. Kresge, Alvin Kresge and Joseph H. Smith, for the reason that none of the notices set forth the fact that the property levied on and sold was used in and about the business of the defendants.   Neither do any of said notices set forth the particulars of the claims, as to whether the service was rendered by the day, month or job, nor as to rate of compensation to be allowed.   The general objection is also made that all notices are of claims against Jefferson D. Kresge, alone.

" The objections pressed at the argument were, that in relation to the claim of Oscar Green, and the first objection to the claims of Eschenbach, Keiper, the two Kresges, and Smith. The other objections to these latter claims, though noted as above, were not insisted on at the arguments, and the auditor understands that they were abandoned.   Mr. Staples made the

further objection that Edwin Keiper and Chas. Eschenbach had not sufficiently proven the amounts due them. As to the other three claims represented by Mr. Lee, it was admitted that the amounts claimed were correct.

"Keiper and Eschenbach were called and examined as witnesses in their own behalf; and it must be admitted that their testimony is far from being as clear in support of their claims as it ought to be. They both worked on the lumber job in Tunkhannock. Keiper peeled bark, skidded logs and cut logs; was to be paid $1.00 per thousand. Eschenbach skidded and hauled logs to mill, for which he was to be paid at first $1.50, and after they moved the mill $2.00, per thousand. Both commenced work in June and worked till the sheriff came, which appears to have been on the 23d of January, 1894. Both were paid a little in cash, and more in goods from the store. Neither kept any book account of the amount of their work, nor of the amount of the charges against them, on account of the same. Keiper, however, swears that the balance due him is at least $50.00 and Eschenbach swears that the balance due him is at least $200, if not more; that the total amount of his work might be $600, $700, or $800, including boarding the men, and the sum total of store bill and cash received should not be $400. That no part of the $200 is for board. Both assert in their notices to the sheriff that the balances claimed are for work in December and January. Eschenbach swears that he never had a settlement with defendants, although he went once to the store for that purpose, but was told that the books were not there.

"Doubtless some allowance is to be made for the kind of work in which these men were engaged, the character of their surroundings, the limitations of their education, and their lack of facilities for bookkeeping. It is common experience that unlearned men oftentimes keep the run of their business transactions in their heads, with a surprising degree of accuracy. Keiper swears that he did keep the run of the logs, though not in a book; and Eschenbach says that first along he knew about what his store bill amounted to.

"But more than this, one of the defendants sat by with the books of Kresge & Green, when this testimony was delivered, and the other defendant was within easy access, and neither

was called to disprove the claim of either of these men. The books were not put in evidence against them, and the conclusion is unavoidable that the defendants would have been heard from if either of these claimants had claimed more than was their due.

" That these men did the work that they claimed to have done has not been denied, and it is not in the heart of the auditor to turn them out of court, because they are not better bookkeepers. This objection to the allowance of the claims is therefore dismissed. Moreover, the 3d section of the act of 1879, under which the claim is made, provides the mode of proceeding, and the tribunal to decide, in case of dispute as to the amount due. . . .

" We come now to the principal question in the case. Were Jefferson D. Kresge and Oscar Green actual partners, doing business under the firm name of Kresge & Green?

" Or, without regard to the actual agreement between themselves, did they, by their conduct and mode of carrying on their business, so induce the public to believe them partners, that, with respect to parties dealing with them, and whose interests may be involved, they are to be held to be partners, whether so in fact or not?

" These questions are further complicated by the fact that during the time of their business connection Oscar Green was a minor, under the age of 21 years."

In regard to this branch of the case, the auditor finds the following facts:

" 1. During the whole time of his business relation with Jefferson D. Kresge, Oscar Green was a minor; being at the time of this report a few months over age. At the time he commenced business with Kresge, he was 19 years of age.

" 2. In April, 1892, Jefferson D. Kresge agreed with one W. W. Smith for the purchase of a stock of store goods at Effort, in Chestnuthill township. An inventory of the goods was taken in the name of Jefferson D. Kresge, amounting to something over $1,200. It was then agreed between Kresge and Green that the latter should clerk for the former at the compensation of $15.00 per month and board until he became of age, when, if everything went right, he might become a partner. In the meantime, Green was to be considered by the

public as a partner.  The business was to be conducted in the name of Kresge & Green.  As Mr. Green very naïvely testifies, his name was to be used in this way, "So that business might be better, being as I had clerked there three years and was acquainted with the people."

"Manifestly, the intention was to convey the impression that Green was a partner, or had an interest in the business. The whole subsequent conduct of the parties was in accordance with this idea.  Their goods were bought and sold in the name of Kresge & Green; the store books were kept in the name of Kresge & Green; the bank account was kept in the name of Kresge & Green, and checks were drawn in the name of Kresge & Green.  A part, at least, of the lumber business was carried on in the name of Kresge & Green.

"3. As a part of the consideration for the stock of store goods bought from Wm. Smith, Jefferson D. Kresge and Oscar Green gave six individual notes of $100 each.  Green testifies that the judgment on which fi. fa. No. 29 issued was entered upon one of the notes given to Smith for store stock.  This execution is against Jefferson D. Kresge and Oscar Green. Green also testifies that the judgment against Jefferson D. Kresge and Oscar Green, on which fi. fa. No. 24, Feb. T., 1894, was issued, was also entered on a note given for money borrowed from Edwin Serfass that went into the business.  It thus appears that Green had not only an ostensible, but an actual interest in the concern, to the extent of the credit, if not money, which he contributed to its capital; if, indeed, a minor who gives his note as his contribution to the capital stock, and, after his arrival at full age, repudiates the obligation, as Green does in this case, can be said to have, in fact, contributed anything at all to the alleged firm's capital.  He testifies that he never contributed anything in money.

"4. In May, 1893, Jefferson D. Kresge purchased, in his own name, the tract of timber land in Tunkhannock township, on which a part at least of his subsequent lumber operations was conducted.  He took the title to this land in his own name, bought a portable sawmill, in his own name, so far as appears; at least, according to Green, he borrowed $800 from his father, Jerome Kresge, for which he gave his individual note alone, as the fi. fa. No. 26, Feb. T., 1894, in evidence shows; and of this

$800, $500 went to pay on the sawmill, and the balance on the land. Kresge hired the men in the woods, and kept the books for the Tunkhannock operations, according to Green, in Kresge's own name. The men who worked on the lumber job in Tunkhannock were paid partly in cash, and partly,—perhaps chiefly,—in goods from the store at Effort, which, as shown, was run in the name of Kresge & Green. Green kept the account of the men in the woods, from data given him by Wilson Kresge, the foreman.

"It is perhaps hardly necessary to recapitulate all the facts established by the testimony, having no direct bearing on the question of distribution. One thing is not denied;—that is, that Green was a minor at the time in question. It follows that all his contracts, except for necessaries, were void. . . .

"Since Green's arrival at full age, which was on April 12, 1894, nothing has been done by him in affirmance of his previous contracts. On the contrary, he here and now expressly repudiates them. He makes no claim on any of the goods levied on, or on the proceeds thereof, as owner, or part owner.

"While, if he were an adult, he would undoubtedly be bound by his acts as a partner, and his private estate also, without regard to the secret understanding between him and Kresge, yet, as a minor, he was incapable of forming a contract of partnership or any other contract; and while he might be liable to any party injured, in an action for deceit, under the authority quoted, yet the auditor does not think that the property, even at Effort, can be held to have been, for the purposes of this distribution, partnership property. Probably the facts would fail to establish a partnership with respect to the Tunkhannock property, even had Green been an adult.

"Holding, then, that for the purposes of this distribution, all the property sold is to be regarded as the individual property of Jefferson D. Kresge, and that consequently the proceeds arising from the sale thereof are to be applied to the different executions in the order of their priority, without regard to whether they are against Jefferson D. Kresge alone, jointly against him and another, or against the so-called firm of Kresge & Green,—nothing remains but to make distribution in accordance with these views, which, if erroneous, the court will correct."

Exceptions to the auditor's report were overruled in an opinion by CRAIG, P. J.

The exceptants appealed.

*Error assigned* was overruling exceptions to the master's report.

*Charles B. Staples, Joseph H. Schull* with him, for appellants. —If one seeks to recover for work and labor done he must show what work was done and what it was worth. If he should admit he did not know how much work was done, he could not recover.

Where the plaintiff has failed to make out a case, the fact that the defendant, though present in court, was not called upon to deny the plaintiff's allegations, is not to be considered by the jury: Underwriter's Association v. George, 97 Pa. 238.

Where two persons hold themselves out as partners and buy and sell in the name of a partnership, an execution against the firm will bind the goods connected with the business in preference to a prior execution against one: Walter's App., 1 Ches. County Rep. 278.

The present case differs from Appeal of York Co. Bank, 32 Pa. 446, and Scull's App., 115 Pa. 141, because in the latter there was no equity whatever. One of the prerequisites to the partnership was the contribution of certain sums of money which never were contributed.

It is true no recovery could be had against Green for his acts while a minor, but he cannot tear down by disaffirmance what he built up. The equity was there—the capital was furnished on the credit of both, and their money, not Kresge's, went into the business to buy goods for the store: Page v. Morse, 128 Mass. 99; Moley v. Brine, 120 Mass. 324; Dunton v. Brown, 31 Mich. 182.

There can be no question that an infant can become a partner: Dulty v. Brownfield, 1 Pa. 497; Goode v. Harrison, 5 Barn. & Ald. 147; Whitney v. Dutch, 14 Mass. 457; 7 Am. Dec. 229; 17 Am. & Eng. Ency. of Law, 921; Brown v. Hartford Fire Ins. Co., 117 Mass. 479; Bush v. Linthicum, 59 Md. 344; Furlong v. Bartlett, 21 Pick. (Mass.) 401; Whittemore v. Elliott, 7 Hun (N. Y.), 518; Yates v. Lyon, 61 N. Y. 344;

David v. Birchard, 53 Wis. 492; Pelletier v. Couture, 148 Mass. 269.

*Cicero Gearhart,* of *Gearhart & Erdman, S. S. Shafer* with him, for individual execution creditors.—During the whole time of his business relations with Kresge, Green was a minor, and consequently could do no act in connection with the business that would render him liable to third persons. He was not liable on notes, nor on contracts made during his business relation with Kresge, by reason of such minority : Knox v. Flack, 22 Pa. 337; Parsons on Contracts, 6th ed. 314.

A mere joint proprietorship or contract will not constitute a partnership, e. g. a joint and several undertaking between two persons, such as a guarantee of a payment of a bond; there must be mutual interest in profit and loss : Ex Parte Miller, 1 N. Y. Leg. Obs. 38.

A partnership is the result of an agreement to share profits and losses; and whether an agreement creates a partnership or not depends on the real intention of the parties to it. Hallstead's App., 157 Pa. 59; Walker v. Tupper et al., 152 Pa. 1; Irvin v. Nashville etc. Ry. Co., 92 Ill. 103.

If Green never had an equity as against Kresge, the firm execution creditors could not attach to any right superior to the separate execution creditors: Scull's App., 115 Pa. 141; York Co. Bank's App., 32 Pa. 446; Coover's App., 29 Pa. 9; Case v. Beauregard, 99 U. S. 119; Davis v. Howell, 22 Am. Law. Reg. 461.

The finding of an auditor on the facts which has been received and approved by the court below, will not be set aside in this court, except for flagrant error: Burrough's App., 26 Pa. 264; Hess's App., 150 Pa. 540; Loomis's App., 22 Pa. 312; Jarman's App., 161 Pa. 151; Potter's App., 158 Pa. 292; Kimball's App., 155 Pa. 112.

*D. S. Lee,* for labor claimants.—It has not been claimed at any time that there was nothing due said labor claimants, and they having made out by their evidence a prima facie case, it was the plain duty of the auditor to allow said claims.

The Supreme Court will not go over the evidence to correct matters of fact found by an auditor and approved by the court

below, except it be an extreme case—one of clear error: McCarty's App., 14 Atl. Rep. 352; Wilkinson v. Kugler, 153 Pa. 238; Prouty v. Prouty & Bars Shoe Co., 155 Pa. 112; Donaldson's Est., 158 Pa. 292; Coulston's Est., 161 Pa. 151.

OPINION BY MR. JUSTICE GREEN, July 18, 1895:

The act of June 12, 1879, P. L. 176, gives a preference in the distribution of the proceeds of sheriff's sales of saw logs, or of sales made by assignees for the benefit of creditors, for all moneys due for cutting, skidding, hauling and driving of saw logs, limiting the amount to $200 to any one laborer. In this case there was a sale by the sheriff under executions, of a stock of saw logs and lumber *inter alia*, and two laborers gave notice to the sheriff of their claims, in due form as required by the act. Charles Eschenbaugh claimed a lien for two hundred dollars, and Edwin Keiper claimed a lien for fifty dollars for work done within the statute. The notices to the sheriff were in due form and sufficiently described the character and particulars of the claims. The auditor found as a fact that the work was done to the full amount of the claim in both cases, and this finding was affirmed by the learned court below. The appellants claim that the evidence upon which the auditor acted was not sufficiently definite to justify his findings.

While it is certain that a strict compliance with the provisions of the statute is requisite to maintain these claims for preferences, it does not seem that there is any particular grade of proof required different from what would be necessary in ordinary cases. Having read the report of the auditor, and the testimony of the men, each one of whom swore positively that the amount claimed by each was certainly due for work actually done by each, we are satisfied of the truth of the fact and see no occasion to revise the findings of the auditor on this subject. Common laborers do not keep books of account for the work they do, setting down each day the amount of work they have done. Their employers keep such books in which the time made by the men is daily credited, and if any mistake is made by the men in the claims they present, it is in the power of the employers to correct them at once. In this case the auditor reports that one of the employers was present and the other within easy reach and neither was called to disprove either of the claims.

We are satisfied with the report of the auditor upon this branch of the case.

On the question of the alleged partnership between Kresge and Oscar Green the auditor finds upon the testimony taken before him and not contradicted, that as between the men themselves there never was any actual partnership. That while it is true Green permitted himself to be held out to the world as a partner, and therefore if he were of age he would be liable as such, in point of fact he was merely a hired man working for fixed wages and had no interest in the business or its profits or losses. He also finds that Green contributed no money or property to the concern, and that while he signed some notes given for a stock of store goods, he paid nothing on the notes, and being a minor who repudiated his obligations on account of his minority, he was subject to no legal liability upon the notes.

The auditor also finds that the tract of timber land in Tunkhannock township was purchased by Kresge and the title taken in his own name, and that he also bought a portable sawmill in his own name, paid all the money that was paid both for the sawmill and on the land, and conducted all the lumber operations in his own name.

These being the facts and the present contest being a contention between individual and partnership creditors, the familiar doctrine becomes applicable that partnership creditors must work out their claims through the equity of the partner. If the partner has no equity there is nothing to support the claims of the partnership creditors to the assets in question as against the creditors of the individual partner who is the real owner of the assets.

In York County Bank's Appeal, 32 Pa. 446, there was a written agreement between the partners, establishing an actual and subsisting partnership, which was subsequently conducted publicly with all the usual indicia of a partnership. But one of the partners had in fact not paid in any part of the capital, and the assets of the firm were in reality contributed by the other partner, whose property they were prior to the partnership. It was held that an individual execution creditor of the partner who owned the assets, was entitled to preference in the distribution of the proceeds of the sale of the property of the firm over a partnership execution creditor. THOMPSON, J.,

delivering the opinion, said, " Between partners themselves the assets of the firm constitute a fund for the payment of their liabilities, and each member has an equity which he can enforce to accomplish this result and, of consequence, a lien on the property to this extent. . . . When a creditor levies on the property of a firm, his execution fixes and attaches to this right to the same extent that it existed in the partners, and hence the preference over a separate execution creditor in the distribution. All this is predicable of a case of joint property only. But where there was no joint property, the rule has nothing to operate on. The mere name is not enough in such a case—there must be an equity. If that equity never existed, a creditor's execution could not attach to any right amounting to a lien, to have the assets appropriated to a partnership debt. That Moore has no interest in the firm property is found by the auditor. . . . This being so the property levied on was individual property in fact though seized in the firm's name. The appellant cannot work out his equity through the partners, for they as such did not exist, inter se, and the individual owner could not give him this right over a prior execution against him individually." All this, and more, was said of a case in which there was an actual partnership fully agreed upon and really carried on for a number of months. But in the case at bar there never was a partnership as between the alleged partners, and this the auditor finds as a fact upon undisputed testimony. In addition to that Green never furnished anything to the firm, and therefore acquired no title to the firm property. He either signed or indorsed some notes with his individual name, but he paid nothing on them. On the contrary he was paid a monthly compensation for his services as clerk or assistant. It is too plain for argument that as between Green and Kresge there never was, and never was agreed to be, any partnership relation. In point of fact Green never contributed a dollar of money or any article of property to the partnership, and he never agreed, or intended, to do anything of that kind, nor could Kresge expect him to do so. The notes on which his name appeared not only were never paid by him in whole or in part, but they did not appear on their face to be firm notes, and his liability could never be more than an individual liability. But such as they were, he was a minor when he gave them, he

had a legal right to repudiate them, and he actually did repu·diate them, as soon as he attained his majority. We find it impossible to discover in the testimony, any proof of the existance of any real equity in Green as a partner, and therefore there is nothing upon which to build up a right on the part of any firm creditor to seize upon any firm property, as against an individual execution creditor of Kresge, who had acquired a prior lien upon the goods.

York County Bank's Appeal was repeated and reaffirmed in Scull's Appeal, 115 Pa. 141, where the facts were much stronger in favor of the firm creditors than they are in the present case. A careful reading of the whole record in the present case, including the arguments of the learned counsel on both sides, convinces us of the entire correctness of the conclusions reached by the auditor and the learned court below.

The decree of the court below is affirmed and appeal dismissed at the cost of the appellants.